THE STATE, EX REL. BURTON, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Burton, *v.* Indus. Comm. (1989), 46 Ohio St. 3d 170.]

(No. 88-752—Submitted August 15, 1989—Decided October 25, 1989.)

*Weiner, Orkin, Abbate & Suit Co., L.P.A., Francis W. Bulloff* and *Walter Kaufmann,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Merl H. Wayman,* for appellee Industrial Commission.

*Schottenstein, Zox & Dunn Co., L.P.A.,* and *James E. Davidson,* for appellee Progressive Plastics, Inc.

*Per Curiam.* To successfully assert a VSSR, a claimant must establish that his or her injury resulted from the employer's failure to comply with a specific safety requirement. *State, ex rel. Whitman,* v. *Indus. Comm.* (1936), 131 Ohio St. 375, 6 O.O. 88, 3 N.E. 2d 52. This is a factual question resting exclusively with the commission. *State, ex rel. Haines,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15, 58 O.O. 2d 70, 278 N.E. 2d 24. Where its decision is supported by "some evidence," the commission has not abused its discretion and mandamus will not lie. *State, ex rel. Burley,* v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 31 OBR 70, 508 N.E. 2d 936. In the case before us the commission concluded that Progressive had complied with Ohio Adm. Code 4121:1-5-1(D)(7). We must therefore determine whether this decision satisfies *Burley.* We find that it does.

Ohio Adm. Code 4121:1-5-11(D)(7)(a) requires that:

"All hopper fed machinery * * * shall have the entire opening protected with substantial grid-type guards to prevent access of the employee's hands into the danger zone or the hopper shall be extended high enough to prevent entry into moving parts. The guard shall be permanently attached to the hopper. * * *"

Ohio Adm. Code 4121:1-5-01 (B)(16), now (69), defined "guard" as "the covering, fencing, railing, or enclosure which shields an object from accidental contact."

Appellant maintains that there was no protective device affixed to the hopper at the time of injury. In the alternative, she contends that the alleged grid was not a "guard" as defined by the Ohio Administrative Code. Neither assertion is persuasive.

The Hastings report constitutes "some evidence" to support the commission's determination that a safety grid was in place. Specifically, R.P. Busa, Jr., who had assigned appellant to operate the mixer, stated that all Tria mixers were purchased with attached grid devices. The report also contains a statement from Waltos, who observed the safety grid in place on the date following the injury, and from appellant, who said her mother viewed a guard in place later on the date of the injury. There was thus no abuse of discretion in finding the grid present.

Appellant also maintains that the commission incorrectly concluded that the grid was a "guard." She suggests that the mere fact that the accident occurred proves that the auger was not "guarded." This argument, too, is

without merit. As stated in *State, ex rel. Jeep Corp., v. Indus. Comm.* (1989), 42 Ohio St. 3d 83, 537 N.E. 2d 215, a device need not be foolproof in order to satisfy a specific safety requirement. The purpose of a specific safety requirement is to "provid[e] *reasonable,* not absolute, safety for employees." *Id.* at 84, 537 N.E. 2d at 217. Other decisions, moreover, have recognized the practical impossibility of guaranteeing that a device will protect against all contingencies. See *State, ex rel. Harris, v. Indus. Comm.* (1984), 12 Ohio St. 3d 152, 12 OBR 223, 465 N.E. 2d 1286, and *State, ex rel. M.T.D. Products, Inc., v. Stebbins* (1975), 43 Ohio St. 2d 114, 72 O.O. 2d 63, 330 N.E. 2d 904.

The interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State, ex rel. Berry, v. Indus. Comm.* (1983), 4 Ohio St. 3d 193, 4 OBR 513, 448 N.E. 2d 134. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State, ex rel. Watson, v. Indus. Comm.* (1986), 29 Ohio App. 3d 354, 29 OBR 483, 505 N.E. 2d 1015. Applying this standard here, Ohio Adm. Code 4121:1-5-11(D)(7)(a) and 4121:1-5-01(B)(16) require only that the auger be guarded from *accidental* contact.

Statements in the Hastings report support the conclusion that appellant's contact was not accidental. Most notably Valeria Waltos averred that she could not penetrate the guard without effort. She also said that she felt the guard during her attempt. We are unpersuaded by appellant's contention that another's inability to freely penetrate the guard cannot support a similar inference as to her. In *State, ex*

*rel. American Home Products Corp., v. Indus. Comm.* (1988), 39 Ohio St. 3d 317, 530 N.E. 2d 873, we recently upheld as "some evidence" the affidavit of a non-witness plant manager who theorized about the cause of an industrial accident. We also decline appellant's invitation to either abandon the "some evidence" rule or reweigh the evidence before us. We have repeatedly expressed our commitment to the "some evidence" rule and our refusal to reweigh evidence. *State, ex rel. Ingold, v. Ormet Corp.* (1988), 39 Ohio St. 3d 353, 530 N.E. 2d 920; *State, ex rel. Lewis, v. Diamond Foundry Co.* (1987), 29 Ohio St. 3d 56, 29 OBR 438, 505 N.E. 2d 962; *Burley, supra; State, ex rel. Mitchell, v. Robbins & Myers, Inc.* (1984), 6 Ohio St. 3d 481, 6 OBR 531, 453 N.E. 2d 721.

Appellant also contends that the commission impermissibly construed the regulation to require protection for only the flat of the hand. The persuasiveness of this argument, however, is diminished by the determination that appellant "forced" her fingers through the guard. Again, the commission was not convinced that appellant unwittingly circumvented the safety device. This distinction is important. Had the commission found that appellant's fingers accidentally slipped through the grid, but denied an additional award because it interpreted the safety provision as appellant suggests, the commission would have impermissibly narrowed the scope of protection. Its denial, however, was not premised on this type of statutory interpretation but instead rested on its conclusion that Progressive had complied with the specific safety requirement and that appellant circumvented the guard.

Appellant lastly proposes that she was denied due process of law when three pieces of evidence—a cardboard

reproduction of the grid, a plastic pellet and the commission hearing transcript—allegedly disappeared prior to hearing before the appellate referee. Appellant, however, waived this due-process issue by failing to specifically raise it below. *State, ex rel. Gibson,* v. *Indus. Comm.* (1988), 39 Ohio St. 3d 319, 530 N.E. 2d 916.

Based on the foregoing, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.