[This decision has been published in *Ohio Official Reports* at 90 Ohio St.3d 531.]

THE STATE EX REL. GREENE, APPELLANT, *v.* MARTIN SPROCKET & GEAR, INC. ET AL., APPELLEES.

[Cite as *State ex rel. Greene v. Martin Sprocket & Gear, Inc.*, 2001-Ohio-12.]

*Workers' compensation—Industrial Commission does not abuse its discretion when its decision denying a violation of a specific safety requirement claim is supported by "some evidence"—Finding of specific-safety-requirement inapplicability upheld.*

(No. 99-787—Submitted October 10, 2000—Decided January 17, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP03-271.

_____

*Per Curiam.*

{¶ 1} Appellant-claimant, Bruce L. Greene, worked for appellee Martin Sprocket and Gear, Inc. ("MSG") in the Hobber Department. On June 1, 1994, claimant was working on a Gould and Ederhardt 48 H Hobbing Machine ("hobber"), which cuts gear or sprocket teeth into raw steel. The change-gear compartment, which transmitted power to the machine, contained several power-driven gears, and was located within the machine's frame. Access was controlled by a panel door that prevented contact with the gears.

{¶ 2} On the date of injury, claimant testified that, immediately upon arrival, he heard a hissing sound coming from the gearbox. He stated:

"From my own experience, I knew that this noise meant that the gears needed oiling, and I proceeded to the rear of the machine.

"I opened the rear panel of this machine and saw that the gears were intermeshed very tightly and looked around for the oil can. I did not see the can and I knew there had to be oil put onto these gears[,] so using my right rubber gloved hand, I reached into the bottom of the machine, which housed a reservoir

of oil and dipped my right gloved hand into this oil. I then proceeded to drip it over these gears, but in so doing, my right gloved hand became caught * * *.”

{¶ 3} Claimant lost three fingers as a result.

{¶ 4} After his workers' compensation claim was allowed, claimant alleged that the gears were not adequately guarded, in violation of a specific safety requirement (“VSSR”). Appellee Industrial Commission of Ohio denied his application, writing:

“ ‘IC-5-03 applies to power-transmission machinery and facilities required to transmit power to operating equipment or machine tools. IC-5-03 shall not be construed as being applicable to power transmission facilities located within the frame of the equipment and exposure is necessary to its operation or adjustment.’

“The exclusion contained in the second sentence requires both stated parts to be satisfied to take effect. Here, the gears were within the frame of the equipment. The next question is whether or not exposure was necessary to its operation or adjustment. The claimant testified that the self-lubricating lines in the machine were not functioning properly. He also indicated that he heard a hissing noise coming from the gear box and, knew, from experience, that the noise meant that the gears needed oiling. He presented no evidence as to how often this noise occurred or how often he had to oil the gears. Mr. Kurtz, the plant manager for the employer, testified that the only adjustment to the gears is made at the time of the setup and that the machine is shut down at that time. He indicated that no further adjustment is made to the gears once production has begun.

“Neither term, operation or adjustment, is contained in the definitional section of the code. Webster's Dictionary defines operation as a doing or performing of a practical work, a method or manner of functioning. Webster's Dictionary defines adjustment as a correction or modification to bring into proper, exact or conforming position or condition.

"Although it certainly was not necessary to leave the doors open for the operation of the machine, it was necessary to open the doors to manually oil the gears. The Staff Hearing Officer finds that the manual oiling is an adjustment pursuant to the code as it was a correction to bring (the machine) into proper condition whether it occurred automatically (self-lubricating lines) or manually (by the operator). The Staff Hearing Officer finds that the statements of Mr. Kurtz are not accurate [or] persuasive as it appears that his concept of adjustment was restricted to one that pertained only to the changing or alteration of gears and did not include any additional process which corrected the machine to bring it into proper condition to perform its function. Therefore, during the time it took to manually oil the machine, the exposure is found to be necessary to an adjustment and the exclusion is applicable in that no guard is required."

{¶ 5} Reconsideration was denied.

{¶ 6} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging a commission abuse of discretion. The court of appeals disagreed with the commission's finding of specific-safety-requirement inapplicability, but agreed with the balance of the order and accordingly denied the writ.

{¶ 7} This cause is now before this court upon an appeal as of right.

{¶ 8} Issues of both the applicability of and compliance with IC-5-03.06 are presented. Upon review, we affirm the judgment of the court of appeals, but do so for reasons different from those advanced by that body.

{¶ 9} The introductory paragraph to IC-5-03 is entitled "Power Transmission Machinery" and states:

"IC-5-03 applies to power-transmission machinery and facilities required to transmit power to operating equipment or machine tools. IC-5-03 shall not be construed as being applicable to power transmission facilities located within the frame of the equipment and exposure is necessary to its operation or adjustment."

{¶ 10} Debate centers on the exclusionary language of the second sentence. The parties agree that the gear-driven power transmission apparatus was located within the hobber's frame. They disagree on the necessity of exposure for operation or adjustment.

{¶ 11} The core difference between the two positions is one of perspective—theory or reality-based. The court of appeals, through its magistrate, adopted the former, reasoning that exposure to the gears, as designed, was required during only "the initial setup of the machine, before a new job was begun and while the machine was not operating." The commission, on the other hand, stressed that the machine, at the time of injury, was not operating as designed. The hobber was engineered to self-lubricate, but, in reality, it did not, forcing the operator to oil the gears. This action, according to the commission, was a necessary adjustment for purposes of the exclusion. We agree.

{¶ 12} We find two cases to be particularly instructive. The first—which is actually the most recent in a series of cases—is *State ex rel. Volker v. Indus. Comm.* (1996), 75 Ohio St.3d 466, 663 N.E.2d 933. The equipment at issue there was a ten-foot wooden stepladder. The claimant in that case was unable to open the ladder into its A-frame position because of a cramped workspace, and instead propped the folded ladder against the wall. He was injured when the ladder skidded out from under him.

{¶ 13} Claimant alleged a violation of a specific safety requirement directing all portable ladders to be equipped with safety shoes, spikes, or spurs. The specific safety requirement, however, also specifically exempted stepladders from the requirement.

{¶ 14} The code defined a "stepladder" as "a self-supporting portable ladder, non-adjustable in length, having flat steps or treads and a hinged back." Ohio Adm.Code 4121:1-5-01(B)(80)(k). The commission found that the ladder's construction was that of a stepladder, rendering the specific safety requirement

inapplicable, and the court of appeals concurred. Claimant appealed here, arguing that, despite its construction, the ladder was not self-supporting at the time of the accident, and could not, therefore, be considered a stepladder. Unpersuaded, we held:

"Claimant asserts that use, not construction, must control. We disagree.

"In some cases, equipment use has determined the applicability of a specific safety requirement. In others, the commission has been guided by the equipment's construction. We cannot, therefore, state that a single standard governs all questions of specific safety requirement applicability." (Citations omitted.) *Id*. at 468-469, 663 N.E.2d at 935.

**{¶ 15}** More recently, we touched on the theory versus reality debate. In *State ex rel. Dibble v. Presrite Corp*. (1999), 85 Ohio St.3d 275, 707 N.E.2d 928, claimant was severely injured while checking cooling hoses on an energized high-voltage transformer. He alleged violations of several specific safety requirements that required insulated personal protective gear when working "in proximity to energized lines."

**{¶ 16}** The employer argued that claimant did not have to work near energized lines because the transformer was designed with an interlock that was to automatically disconnect the power when its doors were open. The claimant asserted that the interlock was broken on the date of injury, forcing him to work next to live lines. The commission adopted the employer's position, as did the court of appeals.

**{¶ 17}** We reversed, writing:

"Claimant testified that the reason he did not cut the transformer's power was because he was unable to contemporaneously do so, due to a broken interlock knife switch. Unfortunately, the commission never addressed this crucial allegation. In examining only the interlock's design and installation, it considered theory but not reality. In addressing how the interlock was supposed to work, the

commission ignored how it did work on the date of injury. The commission must address this key point." *Id*. at 279, 707 N.E.2d at 931.

{¶ 18} The interpretation of a specific safety requirement lies solely with the commission. *State ex rel. Allied Wheel Prod., Inc. v. Indus. Comm*. (1956), 166 Ohio St. 47, 50, 1 O.O.2d 190, 192, 139 N.E.2d 41, 44. Moreover, because a specific safety requirement is a penalty, "it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer." *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 172, 545 N.E.2d 1216, 1219.

{¶ 19} These principles, as well as the cases cited above, persuade us that it was within the commission's prerogative to rely on the actual operation of the hobber at the time of injury in reaching a decision on the potential applicability of the cited safety regulation. Here, the commission found that exposure to the gears was necessary for manual oiling, triggering the provision's exclusionary provision. Because the decision is supported by "some evidence," it must remain intact, and its finding of specific-safety-requirement inapplicability is hereby upheld.

*Judgment affirmed*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*Spitler & Williams-Young Co., L.P.A*., and *William R. Menacher*, for appellant.

*Gibson & Robbins-Penniman* and *J. Miles Gibson*, for appellee Martin Sprocket & Gear, Inc.

*Betty D. Montgomery*, Attorney General, and *C. Bradley Howenstein*, Assistant Attorney General, for appellee Industrial Commission.

_____