**STATE ex rel. TAYLOR, Deceased,**

v.

**INDUSTRIAL COMMISSION OF OHIO et al.**

[Cite as *State ex rel. Taylor v. Indus. Comm.*, 150 Ohio App.3d 309, 2002-Ohio-6451.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–314.

Decided Nov. 26, 2002.

Bentoff & Duber Co., L.P.A., and Glen Richardson, for relator.

Betty D. Montgomery, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Gibson & Robbins–Penniman and J. Miles Gibson, for respondent CMC Electric, Inc.

---

DESHLER, Judge.

{¶ 1} In this original action, relator, Darlene Taylor, the widow of Robert Taylor, has requested that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for an additional award due to the alleged violation of a specific safety requirement ("VSSR") and to issue an order granting the VSSR award.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12, Section (M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that this court deny the requested writ of mandamus. (Magistrate's Decision, Appendix A.) There have been no objections filed to the magistrate's decision.

{¶ 3} The instant case was before this court last year, and this court remanded this case to the commission to consider whether there was evidence in the file demonstrating a violation of Ohio Adm.Code 4121:1–5–23(E). [*State ex rel.*] *Taylor v. Indus. Comm.* (Feb. 1, 2001), Franklin App. No. 00AP–620. Upon remand, relator's application was given further consideration and again denied by the staff hearing officer.

{¶ 4} The magistrate, in consideration of the facts and conclusions of law, concluded that relator had not demonstrated that the commission abused its discretion in finding as it did with respect to the denial of relator's application for a VSSR award.

{¶ 5} Following independent review pursuant to Civ.R. 53(C), we find that the magistrate has properly determined the pertinent facts and applied the salient law thereto. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.

{¶ 6} In accordance with the recommendation contained in the magistrate's decision, the requested writ of mandamus is denied.

Writ of mandamus denied.

PETREE and BROWN, JJ., concur.

## APPENDIX A

### MAGISTRATE'S DECISION

Rendered on July 24, 2002

### IN MANDAMUS

STEPHANIE BISCA BROOKS, Magistrate.

{¶ 7} Relator, Darlene Taylor, as the widow of Robert Taylor, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for an additional award for CMC Electric, Inc.'s ("CMC") violation of a specific safety requirement ("VSSR") and to issue an order granting the requested VSSR award.

### Findings of Fact

{¶ 8} 1. On August 15, 1995, Robert Taylor ("decedent") was working for CMC installing a conduit with electrical wire from an electrical pole to a meter socket on a building under construction. Decedent contacted the primary line and was electrocuted. Decedent died as a result of his injuries.

{¶ 9} 2. Relator filed an application for an additional award for a VSSR on August 11, 1997, asserting that CMC violated several safety requirements.

{¶ 10} 3. By order dated April 27, 1998, a staff hearing officer ("SHO") denied relator's application in its entirety.

{¶ 11} 4. Relator filed a mandamus action in this court. This court granted a limited writ of mandamus ordering the commission to vacate its order denying the VSSR application and to consider whether the evidence in the file demonstrates a violation of Ohio Adm.Code 4121:1–5–23(E). [*State ex rel.*] *Taylor v. Indus. Comm.* (2001), Franklin App. No. 00AP–620.

{¶ 12} 5. On remand from this court, relator's application was heard before an SHO on July 23, 2001. The SHO denied the application for the following reasons:

{¶ 13} "Rule 4121:1–5–23 covers Electrical Conductors and Equipment. Section (E) deals with the approach distances to exposed energized conductors and equipment. Subsection (1) states that the requirements of Section (E) apply only to *the electric utility* and clearance tree-trimming *industries*. The claimant's counsel stated at hearing that the claimant was not involved in the tree-trimming

industry at the time of the accident. Therefore, in order for the rule to apply it must be found that the employer was a part of the electric utility industry at the time the injury occurred.

{¶ 14} "The term's electric utility and electric utility industry are not defined in the O.A.C. Specific Safety codes. The O.R.C., Section 4928.01(A)(11) defines an electric utility as an electric light company that is engaged on a for profit basis in the business of supplying a retail noncompetitive electric service in this state or in the business of supplying both a noncompetitive and a competitive retail electric service in this state. The Webster's New World Dictionary, Second College Edition, defines an industry as any particular branch of a productive enterprise. In this case, the enterprise in question would be a public utility. Considering these definitions, the public utility industry would be any branch of the public utility.

{¶ 15} "* * *

{¶ 16} "In this case there is no evidence that the employer was part of an actual public utility or that they supplied electricity. Nor is there any evidence that the employer was doing contractual work or subcontractual work for a public utility. Instead, Mr. Corfias testified at the original hearing that the employer was an electrical contractor who performs electrical installations to and inside buildings. They run the wire to bring the electricity from the pole into the building. (Transcript page 69.) In order to clarify the matter, Mr. Corfias was asked at this hearing who the employer was working for at the time of the injury. He stated that the employer was a subcontractor of the general contractor who was putting up a new building. The employer was not a contractor or subcontractor with an electric utility. This is supported by the testimony of Mr. Biacofsky, who stated that their job was to get the wire from the pole to the building. It was them [sic] up to Ohio Edison (the electric utility) to hook up the power wire. (Transcript Page 11.)

{¶ 17} "As an electrical contractor the employer put in wires through which electricity flowed, but they did not supply that electricity. Nor did the employer work for an electrical utility. Instead, the employer worked for a general building contractor.

{¶ 18} "Based on the above-stated law, facts, evidence and analysis, it is found that Rule 4121:1–5–23(E) does not apply to the named employer because it was not an electrical utility or part of the electric utility industry at the time of the injury and, therefore, no violation is found." (Emphasis sic.)

{¶ 19} Relator's request for rehearing was denied by order of the commission mailed October 17, 2001.

{¶ 20} Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law

{¶ 21}  In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141 [40 O.O.2d 141, 228 N.E.2d 631].  A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76 [26 OBR 66, 497 N.E.2d 70].  On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56 [29 OBR 438, 505 N.E.2d 962].  Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.  *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165 [22 O.O.3d 400, 429 N.E.2d 433].

{¶ 22}  In order to establish a VSSR, a claimant must prove (1) that there exists an applicable and specific safety requirement in effect at the time of the injury, (2) that the employer failed to comply with the requirements, and (3) that the failure to comply was the cause of the injury in question.  *State ex rel. Trydle v. Indus. Comm.* (1972), 32 Ohio St.2d 257 [61 O.O.2d 488, 291 N.E.2d 748].

{¶ 23}  In making a VSSR award, the commission must determine that a claimant's injury resulted from the employer's failure to comply with the specific safety requirement.  Section 35, Article II, Ohio Constitution; *State ex rel. Haines v. Indus. Comm.* (1972), 29 Ohio St.2d 15 [58 O.O.2d 70, 278 N.E.2d 24].  This is a factual determination, within the final jurisdiction of the commission, subject to correction in mandamus only upon a showing of an abuse of discretion.  *State ex rel. Allied Wheel Products, Inc. v. Indus. Comm.* (1956), 166 Ohio St. 47 [1 O.O.2d 190, 139 N.E.2d 41].  Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus will not lie.  *State ex rel. Burley v. Coil Packing, Inc.* (1978 [sic, 1987] ), 31 Ohio St.3d 18 [31 OBR 70, 508 N.E.2d 936].

{¶ 24}  Ohio Adm.Code 4121:1–5–23(E) provides:

{¶ 25}  "(E) Approach distances to exposed energized conductors and equipment.

{¶ 26} "(1) The requirements of this paragraph apply only to the electric utility and clearance tree-trimming industries.

{¶ 27} "(2) No employee shall be required to approach or take any conductive object closer to any electrically energized power conductors and equipment than prescribed in table 4121:1–5–23(E) to this rule unless:

{¶ 28} "(a) The employee is insulated or guarded from the energized parts (insulating gloves rated for the voltage involved shall be considered adequate insulation); or

{¶ 29} "(b) The energized parts are insulated or guarded from the employee and any other conductive object at a different potential; or

{¶ 30} "(c) The power conductors and equipment are deenergized and grounded."

{¶ 31} The only issue in the present case was whether CMC was an "electric utility industry," since the code provision applies only to electric utility industries and clearance tree-trimming industries. The SHO concluded that CMC was not an "electric utility industry." The SHO noted portions of the record where it was noted that CMC was working on this property to run wire from the pole into the building so that after Ohio Edison hooked up the power wire, the building would have electricity. The SHO concluded that CMC did not supply the electricity but merely put in wires through which electricity would eventually flow.

{¶ 32} The interpretation of a VSSR award is within the final jurisdiction of the commission. *State ex rel. Berry v. Indus. Comm.* (1983), 4 Ohio St.3d 193 [4 OBR 513, 448 N.E.2d 134]. Because a VSSR award is a penalty, however, it must be strictly construed and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170 [545 N.E.2d 1216].

{¶ 33} Relator makes one argument in support of this mandamus action. Relator contends that the commission abused its discretion by not applying the definition of "electric utility industry" as set out by the Ohio Supreme Court in *State ex rel. Sorrells v. Mosier Tree Serv.* (1982), 69 Ohio St.2d 341 [23 O.O.3d 312, 432 N.E.2d 197]. For the following reasons, this magistrate disagrees.

{¶ 34} In *Sorrells,* the court noted that the phrase "electric utility industry" is not defined in the Revised Code. Thereafter, the court reviewed dictionary definitions and came to the following conclusion:

{¶ 35} "Utilizing the foregoing definitions, we find that the phrase 'electric utility industry' means that industry which is concerned with the production and

distribution of electric power. Also, as noted by the court of appeals below, the '[specific safety] standards refer to insulative and other requirements that an electric company uses when its employees are working on high voltage electric lines. * * *' " Id. at 343 [23 O.O.3d 312, 432 N.E.2d 197].

{¶ 36} Relator contends that, since CMC is a company which deals with electricity, it falls under the definition above cited as well as the specific dictionary definitions utilized by the court. However, as cited by the commission, the record indicates that the employees of CMC did not hook the wires up to the transformer; instead, it was up to employees of Ohio Edison to hook up the wires. Employees of CMC merely put the wires in place which would ultimately carry the electricity from the transformer outside the building into the building.

{¶ 37} Although the commission did not cite *Sorrells* in reaching its decision, it is clear that the commission found that CMC was not involved in the production and distribution of electric power. Therefore, without citing *Sorrells,* the commission essentially applied the same test. Upon review of the commission's order and the record, this magistrate finds that relator has not demonstrated that the commission abused its discretion in finding that CMC was not an "electric utility industry," and properly determined that Ohio Adm.Code 4121:1–5–23(E) did not apply.

{¶ 38} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her application for an additional award for the violation of a specific safety requirement and this court should deny relator's request for a writ of mandamus.