THE STATE EX REL. WHEELING–PITTSBURGH STEEL CORPORATION, APPELLEE,
*v.* INDUSTRIAL COMMISSION OF OHIO; FADELEY, APPELLANT.

[Cite as *State ex rel. Wheeling–Pittsburgh Steel Corp. v. Indus. Comm.,* 100 Ohio St.3d 26, 2003-Ohio-4831.]

(No. 2002–1877—Submitted June 24, 2003—Decided September 24, 2003.)

**Per Curiam.**

{¶ 1} Appellee, Wheeling–Pittsburgh Steel Corporation, used overhead cranes in its Mingo Junction plant. In one building, two cranes moved north-south along an approximately 600–foot track above blast furnaces. A walkway ran parallel to the path of the crane for its entire length. This walkway was designed to provide a constant means of exiting the crane in an emergency. The east side of the walkway was guarded. The west side—onto which the crane's cab door opened—was not, to allow the operator to step from the cab to the emergency walkway unimpeded.

{¶ 2} Joseph Fadeley was operating one of those cranes on June 20, 1999. While the events of that night will never be fully known, coworkers indicated that Fadeley had complained of a malfunctioning air-conditioning unit in his crane earlier that shift. Shortly after 7:45 p.m., a fellow employee heard Fadeley's crane moving north, possibly to escape the heat and smoke from a ladle below. When Fadeley's crane later failed to respond to repeated requests for assistance, coworkers went to investigate and found Fadeley lying dead in a ladle, at least 80 feet below. All agree that Fadeley must have fallen from the unguarded side of the emergency walkway.

{¶ 3} After decedent's death claim was allowed, his surviving spouse, Kimberly, appellant-claimant herein, filed for additional compensation, alleging violations of more than one specific safety requirement ("VSSR"). One of the violations asserted was of Ohio Adm.Code 4121:1–5–02(D):

{¶ 4} "(D) Elevated platforms, runways and walkways.

{¶ 5} "* * *

{¶ 6} "(1) Guarding.

{¶ 7} "(a) Elevated platforms, runways and walkways six feet or more above floor or ground level shall be guarded with standard railings and toeboards. * * *

{¶ 8} "(b) When the requirement prescribed above would result in an impairment of the work being performed, alternative protection may be provided for employees. Such alternative protection shall provide safety equivalent to or greater than that required in paragraph (D)(1)(a) of this rule.

{¶ 9} "* * *

{¶ 10} "(4) Special purpose runways.

{¶ 11} "Runways used exclusively for special purposes, such as oiling, shafting, or filling tank cars, may have the railing on one side omitted where operating conditions necessitate such omission, provided the falling hazard is minimized by using a runway of not less than eighteen inches wide."

{¶ 12} At a hearing of the Industrial Commission of Ohio, Wheeling–Pittsburgh argued that the walkway was a special-purpose walkway and that operating conditions necessitated omission of guarding on the walkway's west side. The claimant countered (1) that operating conditions did not necessitate omission of a guardrail, and (2) that the walkway was not used exclusively for a special purpose.

{¶ 13} The commission ruled in favor of the claimant. The commission found that operating conditions did not require omission of protection, based on Wheeling–Pittsburgh's postaccident erection of a modified rail/gate system on the walkway's west side that did not interfere with the crane's operation. Consequently, it found that the exception of Ohio Adm.Code 4121:1–5–02(D)(4) did not apply and that the open west side constituted a violation of Ohio Adm.Code 4121:1–5–02(D)(1).

{¶ 14} Wheeling–Pittsburgh petitioned the Court of Appeals for Franklin County for a writ of mandamus ordering the commission to vacate its order and deny the award for a VSSR. The court of appeals granted the writ, guided by the principle that because awards for VSSRs are penalties, all reasonable doubts as to interpretation and application of specific safety requirements must be resolved in the employer's favor. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 172, 545 N.E.2d 1216; *State ex rel. Carder v. Indus. Comm.* (2002), 94 Ohio St.3d 165, 166–167, 761 N.E.2d 32. It held that (D)(4)'s specification of "the railing" as a potential obstruction meant the "standard railing" required by Ohio Adm.Code 4121:1–5–02(D)(1)(a) and defined by subsection (E). In other words, if operating conditions necessitated absence of the standard guard railing referred

to in (D)(1)(a), no more was required to establish the applicability of (D)(4)'s special-purpose runway exception. Contrary to what the magistrate proposed, the employer did not have to show that operating conditions necessitated the absence of standard guard railing *and* any of the other forms of protection envisioned by Ohio Adm.Code 4121:1–5–02(D)(1)(b), such as the nonstandard railing ultimately installed.

{¶ 15} The court of appeals also ruled that once the exception applied, *no* form of protection was required as a substitute for the standard guard rail omitted from one side. It rejected the claimant's contention that alternative protection was still required. She now appeals to this court as a matter of right.

{¶ 16} There are two issues: What does Ohio Adm.Code 4121:1–5–02(D)(4) require, and when does it apply? The claimant argues that protection was required on the walkway's open side because the (D)(4) exception did not apply. Alternatively, she contends that even if controlling, (D)(4) excuses only the standard guard railing required by 4121:1–5–02(D)(1)(a), not the alternative protection required by (D)(1)(b). We disagree with both propositions.

{¶ 17} The first flaw in claimant's position derives from her second argument, which would in effect eliminate the (D)(4) exception or, at a minimum, render it redundant. If (D)(4) required alternative protection for a special-purpose walkway when a standard guard railing is impractical, then the effect of (D)(4) would be much the same as (D)(1)(a) and (b), and its inclusion would be redundant and pointless.

{¶ 18} Such a reading also defies logic. The (D)(4) exception demands that the falling hazard be "minimized" by using a walkway at least 18 inches wide. If the claimant's interpretation is accepted, however, the falling hazard must be virtually eliminated, not merely minimized, by means equivalent to the standard railing, according to (D)(1)(b). Consequently, it makes no sense that the code's authors would require employers to minimize a nonexistent hazard.

{¶ 19} The claimant's interpretation of (D)(4) is also undermined by the principle that specific safety requirements must contain "such lawful, specific and definite requirements or standards of conduct * * * which are of a character plainly to apprise an employer of his legal obligations toward his employees." *State ex rel. Holdosh v. Indus. Comm.* (1948), 149 Ohio St. 179, 36 O.O. 516, 78 N.E.2d 165, at syllabus. Nothing in Ohio Adm.Code 4121:1–5–02(D)(4) plainly apprises an employer that where a standard guard railing is impractical, alternative protection must be provided. Moreover, when viewed with the tenet that a specific safety requirement, being a penalty, must be strictly construed in the employer's favor, the claimant's reading of the (D)(4) exception cannot stand. *State ex rel. Burton.*

{¶ 20} We find, therefore, that where operating conditions necessitate the omission of standard guard railing, (D)(4) does not require alternative protection. Inquiry turns then to whether Ohio Adm.Code 4121:1–5–02(D)(4) applies. There is little debate that the walkway at issue was a special-purpose one, intended for emergency use by crane operators. This conclusion, however, does not automatically exempt the employer from the guardrail requirement of (D)(1)(a), for it is, after all, still an elevated runway. To the contrary, guard railing can be omitted only "where operating conditions necessitate."

{¶ 21} The commission found that operating conditions did not necessitate omission, based solely on Wheeling–Pittsburgh's postaccident erection of a modified railing/gate system that permitting escape without hindering the crane's function. The court of appeals declared that finding to be an abuse of discretion, stressing the exact language of (D)(4): special-purpose runways "may have the *railing* on one side omitted where operating conditions necessitate." (Emphasis added.) Therefore, the only germane consideration was whether standard guard railing as defined in 4121:1–5–02(E) would interfere with the operating conditions of the crane. Here, it is uncontested that the modified gate/railing system was not a "standard guard railing" as defined in Ohio Adm.Code 4121:1–5–01(B)(131) and 4121:1–5–02(E), since it lacked the intermediate rail required by that definition of standard guard railing. Accordingly, the court of appeals held that it was irrelevant whether the operating conditions of the runway and crane could be maintained with the modified rail/gate. What mattered was whether the integrity of the operation could be maintained with an Ohio Adm.Code 4121:1–5–02(E) standard guard railing in place. While the commission did not directly answer this question, its order suggests that operations could *not* be maintained with a standard guard railing.

{¶ 22} The preeminent concern underlying the walkway's construction was the availability of an immediate and accessible way to exit the crane in case of emergency. The commission concluded that the absence of an intermediate rail offered "a means of escape from the crane in the event of an emergency, with a single railing not providing a total restriction on the operator's ability to get to the emergency walkway." This implies that the intermediate rail required by standard guard railing *would* restrict the operator's escape, and common sense corroborates this.

{¶ 23} We also disapprove of the commission's use of Wheeling–Pittsburgh's subsequent attempts to enhance worker safety as essentially a means to penalize the employer. In this case, a tragic accident occurred, and Wheeling–Pittsburgh quickly instituted measures to ensure that such a mishap was never repeated. The commission's reasoning is a true disincentive to such remedial efforts, for had Wheeling–Pittsburgh done nothing, the commission apparently would have

had no evidence from which to conclude that operating conditions could have been unimpaired by standard guard railing. We will not validate such a rationale.

{¶ 24} Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., dissent.

---

ALICE ROBIE RESNICK, J., dissenting.

{¶ 25} I would reverse the judgment of the court of appeals.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

---

Vorys, Sater, Seymour & Pease, L.L.P., Joseph A. Brunetto and Randall W. Mikes, for appellee.

The Okey Law Firm, L.P.A., Richard A. Nicodemo and Scott A. Washam, for appellant.