[Cite as *State ex rel. Hudson v. Cleveland*, 2025-Ohio-2871.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Sean Hudson c/o Latesha Hudson, | : | |
| | : | |
| Relator, | : | No. 24AP-207 |
| | : | |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| City of Cleveland et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on August 14, 2025

**On brief:** *Nager, Romaine & Schneiberg Co., LPA, Jerald A. Schneiberg*, and *Catherine Lietzke*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Sean Hudson, deceased ("Hudson"), c/o Latesha Hudson ("claimant") initiated this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to reverse its denial of claimant's application for an award of additional benefits based on a violation of a specific safety requirement ("VSSR") by respondent City of Cleveland, Hudson's former employer.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, concluding the

commission did not abuse its discretion because its order denying Hudson's VSSR application is supported by some evidence. The magistrate accordingly recommends this court deny the request for a writ of mandamus.

{¶ 3} Claimant filed one objection to the magistrate's decision, arguing the scene of Hudson's workplace accident fit the legal definition of a construction site and thus Adm.Code 4123:1-3-07(F) is applicable to his injury. This court will conduct an independent review to ensure "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 4} For this court to issue the requested writ of mandamus, claimant must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). When the record contains some evidence to support the commission's findings, however, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). The commission retains discretion to interpret and draw inferences from the evidence before it. *State ex rel. Lawson v. Mondie Forge*, 2004-Ohio-6086, ¶ 34. For that reason, this court does not "substitute its judgment for that of the commission or second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 2013-Ohio-4550, ¶ 22.

{¶ 5} Hudson was working as an arborist for the City of Cleveland when a six-foot-tall tree stump he and his team were working to remove fell and pinned him to the ground, killing him. After the Ohio Bureau of Workers' Compensation investigated the accident and cited the City of Cleveland with five workplace safety violations, a worker's compensation death claim was allowed. On January 14, 2022, claimant filed an application for an additional VSSR award, alleging violations of specific safety requirements that included Adm.Code 4123:1-3-07(F). Claimant challenges the commission's denial of her application for an additional VSSR award. "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits." *State ex rel. Precision Steel*

*Servs., Inc. v. Indus. Comm.*, 2015-Ohio-4798, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 77 Ohio St.3d 271, 272 (1997).

{¶ 6}   To obtain a VSSR award, claimant must establish the following: (1) an applicable and specific safety requirement exists, which was in effect at the time of the injury; (2) the employer failed to comply with the requirement; and (3) the failure to comply was the cause of the injury in question. *State ex rel. Strawser v. Indus. Comm.*, 2023-Ohio-4327, ¶ 53 (10th Dist.); Adm.Code 4121-3-20.  Because a VSSR award is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer.  *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989).

{¶ 7}   We review the commission's decisions regarding "questions of credibility and the weight to be given to evidence" for an abuse of discretion, as these "are clearly within the discretion of the commission as the fact finder."  *State ex rel. Berry v. Indus. Comm.*, 2024-Ohio-2616, ¶ 23 (10th Dist.).  As with any interpretation of law, however, we construe specific safety regulations de novo.  *Id.*; *see TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677 and *In re Alamo Solar I, L.L.C.*, 2023-Ohio-3778.  Only if the text of a specific safety regulation is ambiguous would we consider the commission's interpretation, and even then, the value of the commission's interpretation is limited to its persuasive power.  *Berry* at ¶ 24.

{¶ 8}   Under this framework, we examine whether this case involved an applicable and specific safety requirement.  *Strawser* at ¶ 53.  If there was no such requirement, we must deny claimant's petition for a writ of mandamus.  Claimant argues the City of Cleveland violated Adm.Code 4123:1-3-07(F), a construction regulation prohibiting employees from passing underneath "loads handled by power shovels, derricks, or hoists."  Before we can analyze Adm.Code 4123:1-3-07(F), however, we must determine whether Adm.Code 4123:1-3 applies to the present case at all.  In relevant part, the regulation defines its own scope:

> The purpose of this chapter of the Administrative Code is to provide safety for life, limb and health of employees engaged in construction activity.

> Activities within the scope of this chapter, generally referred to herein as "construction", include: the demolition, dismantling, excavation, construction, erection, alteration, repair, painting, decorating, glazing, cleaning, and pointing of buildings and other structures and the installation of machinery or equipment and all operations in connection therewith; the excavation, construction, alteration and repair of subways, sewers, tunnels, trenches, caissons, conduits, pipelines, roads, and all operations pertaining thereto; the moving of buildings, signs, and other structures; and to the construction, alteration, repair, or removal of wharfs, piers, abutments, or any other construction, alteration, repair, or removal work carried on, in, about, or over water.
>
> This chapter covers construction activities of employees whose employer engages in such work as its principal business. This chapter also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure, as well as substantial demolition or razing of an existing structure. This chapter does not cover employees of employers when the activities are performed in the ordinary course of maintenance work.

Adm.Code 4123:1-3-01(A). Hudson here was engaged in the removal of a tree stump from a cultural garden. The commission's staff hearing officer concluded claimant offered insufficient evidence to prove arborists fit within the scope of Adm.Code 4123:1-3, and the magistrate agreed. As already explained in the appended magistrate's decision, Adm.Code 4123:1-3-01(A) includes many examples of activities that qualify as construction, but none could plausibly include the work of an arborist like Hudson. The removal of trees or tree stumps is not mentioned in the rule. Furthermore, claimant's assertion that the tree stump removal was a construction activity has no evidentiary basis. Even if there was construction taking place in the vicinity of the cultural garden, claimant does not explain how that fact would cause the removal of a tree stump to be classified as construction; the rule regulates "construction activity," not just any activity that occurs near a construction site. Adm.Code 4123:1-3-01(A). Thus, because Hudson was not engaged in a construction activity under Adm.Code 4123:1-3-01(A), claimant failed to prove Adm.Code 4123:1-3-07(F) applied to

the tragic circumstances that led to Hudson's death. Lacking an applicable and specific safety requirement, the commission and magistrate correctly decided the City of Cleveland has no obligation to pay additional benefits based on the alleged VSSR.

{¶ 9} Upon review of the magistrate's decision, an independent review of the record, and due consideration of claimant's objection, we find the magistrate has properly determined the facts and applied the law. We therefore overrule claimant's sole objection and adopt the magistrate's decision, including the findings of fact and conclusions of law. Accordingly, the requested writ of mandamus is hereby denied.

*Objection overruled*;
*writ of mandamus denied.*

BEATTY BLUNT and BOGGS, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Sean Hudson<br>C/O Latesha Hudson, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  24AP-207 |
| | : | |
| City of Cleveland et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on  April 17, 2025

*Nager, Romaine & Schneiberg Co., LPA, Jerald A. Schneiberg,* and *Catherine Lietzke*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 10} Relator, Sean Hudson, deceased ("Hudson") c/o Latesha Hudson ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order that found the City of Cleveland ("employer") did not violate a specific safety requirement ("VSSR").

Findings of Fact:

{¶ 11} 1. Hudson was employed as an Arborist I for the employer. On July 14, 2021, Hudson was working at the Romanian Cultural Garden located on MLK Boulevard in Cleveland, Ohio. Two coworkers, Curtis Wells and Raymond Nelson, were also working at the site. Hudson was engaged in cutting down a six-foot-tall stump when he was crushed by the falling stump. Some of the facts surrounding the circumstances of his death are in dispute, with the record providing differing stories of how the accident occurred and whether a truck with a gripping arm and rope attached was being used to hoist the stump at the time of the accident.

{¶ 12} 2. The EMS report indicates the following: (1) Hudson's coworkers stated that they were cutting down a tree when a chainsaw became stuck; (2) the employees tied a rope to the tree and used a crane to build leverage when the tree came around and pinned Hudson on the ground, crushing his head; and (3) Hudson was trapped under the tree until the employees moved the large tree off of him.

{¶ 13} 3. The police report indicates the following: (1) according to Raymond Nelson, Hudson's coworker who was working at the scene of the accident, the employees were cutting down trees when Hudson was having difficulty removing a tree trunk from a stump; (2) Hudson then began using a chainsaw to assist him with removing the tree trunk as they were attempting to hoist the tree trunk in the air with rope; (3) the chainsaw got stuck in the tree trunk as Hudson was attempting to cut the tree; and (4) once Hudson was able to remove the chainsaw, the tree trunk fell over and struck Hudson in the head area.

{¶ 14} 4. A July 14, 2021, incident report by Nelson indicated that during a final cut on an oak tree, the chainsaw got stuck, and while trying to free the saw, the trunk came loose and caught Hudson's arm and rolled on him.

{¶ 15} 5. A July 14, 2021, incident report by Wells indicated that during the final cut on an oak tree, the chainsaw got stuck, and while trying to free the saw, the trunk came loose, caught relator's arm and rolled on him. Wells indicated that he immediately moved the tree off of Hudson with the log truck.

{¶ 16} 6. The Ohio Bureau of Workers' Compensation's ("BWC") Public Employment Risk Reduction Program ("PERPP") investigated the accident and issued five citations. Among other violations, the employer was alleged to have violated

R.C. 4167.04(A)(1). The investigation found that the employees were felling trees using a chainsaw and working in a drop zone, exposing employees to struck-by and crush hazards.

{¶ 17} 7. A worker's compensation death claim was allowed, and on January 14, 2022, claimant filed an application for an additional VSSR award. The application alleged numerous violations of specific safety requirements, but the only section relevant for purposes of the present mandamus action is Adm.Code 4123:1-3-07(F), entitled "Cranes, hoists, and derricks," which provides, in pertinent part:

> (F) No employee shall be permitted to pass or be under loads handled by power shovels, derricks, or hoists. Employees who are not engaged in vehicle loading shall be required to stand back from any such vehicle during the loading.

{¶ 18} 8. On May 16, 2022, the BWC safety violations investigation unit issued a report of investigation. The report stated that Jennifer Kipp, the manager of the urban forest department, stated the chainsaw became stuck in the tree, and the tree fell, striking Hudson in the arm and rolling onto his body. Kipp said it was reported that Nelson was walking back to his truck to obtain a second saw because Hudson's saw was stuck in the tree. Kipp believed Wells was in the truck on the job site and both Wells and Nelson observed the actual incident occur. She indicated that Wells attempted to remove the fallen tree from Hudson by tying one end of a rope to the fallen tree and the other end of the rope to a boom truck using the boom truck to pull the tree. Kipp indicated that Wells was onsite to operate the boom truck for lifting and lowering heavy objects. Kipp advised that the injury did not include cranes, hoists, or derricks.

{¶ 19} 9. A hearing was held before a staff hearing officer ("SHO"), at which only Kipp testified. She testified, in pertinent part, as follows: (1) Wells and Nelson dictated to her their statements, she wrote them on the incident reports, they reviewed them, and they signed them; (2) Wells told her that there was no lifting going on before the accident; and (3) when she arrived at the scene, she saw a rope tied to the grapple on the log truck, but she did not know whether it was tied to the truck before or after the accident.

{¶ 20} 10. The SHO issued a July 25, 2023, order that denied the application for VSSR and found the following: (1) Kipp could not verify whether the rope had been tied to the tree stump before or after the accident; (2) claimant failed to establish that an applicable and specific safety requirement exists under these circumstances, noncompliance of the

cited administrative code sections, and proximate cause of the injury due to noncompliance of the cited code sections; (3) insufficient evidence was offered to prove that tree trimmers or arborists fit within the construction scope of Adm.Code 4123:1-3-01(A); (4) Hudson failed to establish that the employer did not provide verbal and demonstrative instructions regarding the safe operation and maintenance of cutting equipment; (5) the evidence demonstrates that Hudson was trained on appropriate safety protocols in his position as an Arborist I; (6) Hudson failed to prove that the log truck with attached gripping arm and rope is a crane, hoist, or derrick, as defined in Adm.Code 4123:1-3-07; (7) it has not been proven that the rope in question was attached to the tree trunk and the gripping arm of the log truck prior to the accident; it was in place as a preventative measure to stop the tree trunk from rolling into the street and not providing leverage as a hoisting apparatus; (8) because the evidence fails to establish that the equipment being used equates to a crane, hoist, or derrick, there is no applicability of the rule against employees being permitted to pass or be under loads handled by power shovels, derricks, or hoists, as well as no applicability of the need for a substantial overhead guard being provided to protect the operator of a derrick from falling material and objects; (9) thus, the weight of the evidence fails to establish applicability of the cited administrative code sections, noncompliance of the cited administrative code sections, and/or proximate cause of the injury due to noncompliance of the cited code sections; (10) there is no violation of Adm.Code 4123:1-3-01(A); 4323:1-3-07(F); 4123:1-3-07(G)(5); and/or 4123:1-3-17(C); and (11) Hudson's VSSR application is denied in its entirety.

{¶ 21} 11. Claimant filed a request for reconsideration of the SHO's order, which the commission denied on September 27, 2023.

{¶ 22} 12. On March 22, 2024, claimant filed a complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 23} The magistrate recommends that this court deny claimant's petition for writ of mandamus.

{¶ 24} In order for this court to issue a writ of mandamus, a claimant must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no

adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 25} To establish a VSSR, a claimant must prove that: (1) there exists an applicable and specific safety requirement in effect at the time of the injury; (2) the employer failed to comply with the requirements; and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257 (1972).

{¶ 26} The interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193 (1983). However, because a VSSR is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989). The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. *Trydle*; *State ex rel. A-F Industries, ACME-FAB Div. v. Indus. Comm.*, 26 Ohio St.3d 136 (1986). When the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987). Furthermore, a safety requirement must be specific enough to plainly apprise an employer of its legal obligations to its employees. *Frank Brown & Sons, Inc.*, 37 Ohio St.3d 162.

{¶ 27} In the present case, claimant's sole argument is that there was no evidence to support the SHO's decision to deny the VSSR application pertaining to Adm.Code 4123:1-3-07(F). Specifically, claimant asserts that there was no evidence to find that hoisting did not occur. Claimant contends that the SHO's finding that "even if the rope was attached to the tree trunk and the gripping arm of the log truck prior to the accident, it was in place as a preventative measure to stop the tree trunk from rolling into the street and not providing leverage as a hoisting apparatus" was actually an argument by respondent's counsel at the merit hearing. (R. 481) Claimant asserts there was no evidence, document, or testimony in the record to support this statement, and this statement is contrary to the statements given to first responders and the findings of PERPP. Claimant also points out that Kipp testified at the hearing that she did not know why the rope was being used, the rope was tied to the

truck when she arrived at the scene, and she did not know whether the rope was tied to the boom before or after the injury.

{¶ 28} Initially, claimant's argument presupposes that Adm.Code 4123:1-3 applies to the present circumstances. Adm.Code 4123:1-3-01 provides, in pertinent part, the following:

> (A) Scope.
>
> The purpose of this chapter of the Administrative Code is to provide safety for life, limb and health of employees engaged in construction activity. In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of this chapter to permit the use of other devices or methods when it is clearly evident the equivalent protection is thereby secured.
>
> Activities within the scope of this chapter, generally referred to herein as "construction", include the demolition, dismantling, excavation, construction, erection, alteration, repair, painting, decorating, glazing, cleaning, and pointing of buildings and other structures and the installation of machinery or equipment and all operations in connection therewith; the excavation, construction, alteration and repair of subways, sewers, tunnels, trenches, caissons, conduits, pipelines, roads and all operations pertaining thereto; the moving of buildings, signs, and other structures, and to the construction, alteration, repair, or removal of wharfs, piers, abutments, or any other construction, alteration, repair, or removal work carried on, in, about, or over water.
>
> This chapter covers construction activities of employees whose employer engages in such work as its principal business. It also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure, as well as substantial demolition or razing of an existing structure, but does not cover employees of such other employers when the activities are performed in the ordinary course of maintenance work.

{¶ 29} The SHO here concluded that claimant offered insufficient evidence to prove that tree trimmers or arborists fit within the construction scope of Adm.Code 4123:1-3-01(A). The magistrate agrees. None of the descriptions in Adm.Code 4123:1-3-01(A)

describe the type of work being performed by Hudson, an Arborist I. Adm.Code 4123:1-3-01(A) indicates that the chapter applies to those engaged in "construction activity." The provision then provides that "construction" includes "the demolition, dismantling, excavation, construction, erection, alteration, repair, painting, decorating, glazing, cleaning, and pointing of buildings and other structures and the installation of machinery or equipment and all operations in connection therewith," and "the excavation, construction, alteration and repair of subways, sewers, tunnels, trenches, caissons, conduits, pipelines, roads and all operations pertaining thereto; the moving of buildings, signs, and other structures, and to the construction, alteration, repair, or removal of wharfs, piers, abutments, or any other construction, alteration, repair, or removal work carried on, in, about, or over water." None of these descriptions describe the actions Hudson was engaged in. Claimant contends that the area where Hudson was removing the tree was generally a "construction site" because the cultural gardens were a work in progress and constantly evolving with the addition of statues and tributes, and the provision provides that "construction" includes "all operations thereto; the moving of buildings, signs and other structures[.]" However, there was no evidence presented as to why the tree stump was being removed. There is nothing in the record that indicates that the tree stump was being removed as part of any "construction," as that term is defined. One can imagine several reasons why a tree may need removal that are unrelated to any "construction," such as rot, disease, storm damage, aesthetics, or safety. None of these reasons would seem to fall within the "construction" descriptions in Adm.Code 4123:1-3-01(A). The lack of any indication in the record as to why this tree stump was being cut makes consideration of claimant's argument untenable.

{¶ 30} Nevertheless, even if Hudson's work that day as an arborist fell within the description of "construction" in Adm.Code 4123:1-3-01(A), the magistrate agrees with the commission that there was insufficient evidence in the record that a violation of the specific safety requirement in Adm.Code 4123:1-3-07(F) occurred here. There is conflicting evidence in the record as to whether the log truck in question was being used as a crane, hoist, or derrick at the time of the accident, even if it is assumed the truck was being used in "construction." The EMS and police report indicate a rope was used to free the stuck chainsaw. The EMS report indicated that the employees tied a rope to the tree after the

chainsaw got stuck and used a crane to build leverage to free the chainsaw. The police report similarly indicated that the workers were attempting to hoist the tree trunk in the air with rope when the chainsaw got stuck in the tree trunk.

{¶ 31} However, the PERPP citations do not mention a "hoist" being utilized prior to the accident. Neither Nelson's nor Wells's statements (as dictated to Kipp and transcribed by her) in their respective incident reports mentions using a rope to hoist the tree to free the chainsaw. Wells's report only indicates that they moved the tree off of Hudson using the log truck. The BWC's May 16, 2022, report of investigation also does not mention a hoist being used to free the stuck chainsaw, and Kipp only mentions a rope and the truck being used to pull the tree off Hudson. Kipp also stated that the injury did not include cranes, hoists, or derricks. At the hearing, Kipp testified that Wells and Nelson reviewed the statements they dictated to her and signed the statements. Wells told her that they lifted the log off of Hudson but there was no lifting before the accident. When she arrived at the scene, there was a rope tied to the boom/grapple, and she saw the rope tied to the truck. She did not know whether it was tied before or after the accident. Given the uncertain state of the record and conflicting evidence, the commission had some evidence to find that it was not proven that the rope in question was attached to the tree trunk and the gripping arm of the log truck prior to the accident, and, thus, it was not proven that the equipment being used equated to a crane, hoist, or derrick.

{¶ 32} The magistrate also finds moot claimant's argument concerning the SHO's determination that, even if a rope had been attached to the boom, it was in place as a preventative measure to stop the tree trunk from rolling into the street and not providing leverage as a hoisting apparatus. Claimant points out that there was no testimony to support this statement and, instead, this argument was presented by the employer's counsel at the hearing. While the magistrate agrees that no testimony was presented at the hearing to support counsel's statement, the issue is moot given the determination above that there existed insufficient evidence to support the claim that a hoist was being used on the tree trunk at the time of the accident.

{¶ 33} Based on the foregoing reasons, the magistrate concludes there was some evidence to support the commission's denial of claimant's VSSR application.

{¶ 34} Accordingly, it is the magistrate's recommendation that this court deny the claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.