[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 175.]

THE STATE EX REL. BURT, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Burt v. Indus. Comm.*, 1999-Ohio-19.]

*Workers' compensation—Accidental expulsion of rod from spinner machine— Industrial Commission's denial of widow-claimant's application for a violation of a specific safety requirement, Ohio Adm.Code 4121:1-5- 11(D)(9), not an abuse of discretion, when.*

(No. 98-650—Submitted September 14, 1999—Decided November 17, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD01-12.

_____

{¶ 1} Decedent Lloyd L. Burt was employed as a kettleman for appellee Gregory Galvanizing & Metal Processing, Inc. ("GGMP"). On July 5, 1994, decedent was removing excess molten zinc from one-hundred-fourteen-inch metal rods. To do this, the rods were placed into a spinner. The spinner was a cylindrical rack-type device that was approximately eleven feet long and twenty-seven inches in diameter. It had sequentially spaced perforated disks through which the rods were inserted and held in place.

{¶ 2} The spinner was powered by a Spin-A-Batch, a mounted rotary air motor suspended by an overhead crane. The Spin-A-Batch was controlled by levers attached to the motor housing by means of an arm extending down to the operator.

{¶ 3} The spinner was ultimately lowered into a spinner tank or box. The box had two doors on either side, and, at the time of the accident, was protected by a ten-to-twelve-inch-high metal flap designed to prevent the molten zinc from splashing out.

**{¶ 4}** On the date in question, decedent was operating the Spin-A-Batch from a four-foot-high platform located approximately six to seven feet from the spinner tank. He had lowered the loaded rack into the box and had begun to spin it, when a rod somehow worked its way loose. To what extent the rod worked loose is unclear, as testimony conflicts as to whether the rod still was partially inside the rack or was completely ejected in the split second prior to the accident. In any event, the rod struck decedent's head, killing him instantly.

**{¶ 5}** Decedent's widow, Valerie Burt, appellant herein, filed a death claim with appellee Industrial Commission of Ohio, which was allowed. She followed that with an application for additional compensation, alleging that GGMP had violated a specific safety requirement ("VSSR"), Ohio Adm.Code 4121:1-5-11(D)(9). The staff hearing officer found no VSSR, writing:

"The undersigned has examined the Photographs obtained by Special Investigator Carol A. Starcher * * *.

"Most particularly, the undersigned has examined the Photographs at Employer's Exhibits # V and # VI and has concluded that they correctly depict the machine in question as it existed at the time of the fatality of record.

"The undersigned concludes as a finding of fact and determination of law that the same WAS guarded within the meaning and for the purposes of OAC 4121:1-5-11(D)(9) * * * and as defined in OAC 4121:1-5-01(B)(69, 70 & 117).

"* * *

"The video actually proves the contrary of Widow-Claimant's contention: Nothing in the video demonstrates that Employer knew, should have know[n] or could or should have anticipated the distortion of a man-sized rod (Exhibit IV for Employer) into the lethal steel boomerang at Exhibit 1, Photograph 1, which the parties have stipulated to have been the fatal instrumentality.

"Testimony that Employer in fact guarded the spinner from the ejection of bolts and molten galvanizing material is entirely consistent with counsel[']s video.

"Testimony of record is adopted as if fully reproduced herein."

{¶ 6} Rehearing was denied.

{¶ 7} Widow-claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying her VSSR application. The court of appeals disagreed, after determining that the commission properly interpreted the safety requirement at issue, and did not abuse its discretion in finding no evidence of a violation.

{¶ 8} This cause is now before this court upon an appeal as of right.

_____

*Mitchell A. Stern*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Craigg E. Gould*, Assistant Attorney General, for appellee Industrial Commission of Ohio.

*Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.*, *Edward D. Murray* and *W. Thomas Newell*, for appellee Gregory Galvanizing & Metal Processing.

_____

***Per Curiam.***

{¶ 9} Ohio Adm.Code 4121:1-5-11(D)(9) requires:

"Power driven tumblers, rattlers, drums, barrels, containers, or similar machines that rotate, spin, or rock shall be guarded on an area or individual basis. The guard shall be interlocked with the drive mechanism so that the machine cannot operate unless the guard or enclosure is in place."

{¶ 10} Ohio Adm.Code 4121:1-5-01(B)(69) and (70) define the key terms "guard" and "guarded" as:

"(69) 'Guard': the covering, fencing, railing, or enclosure which shields an object from accidental contact. * * *

"(70) 'Guarded': means that the object is covered, fenced, railed, enclosed, or otherwise shielded from accidental contact."

{¶ 11} Controversy centers on the employer's duty entailed by the guarding requirements. GGMP contends that a guard must protect an employee from accidental contact with a machine's moving parts. Claimant contends that a guard must also protect the employee from accidental contact with objects ejected from a machine.

{¶ 12} This accident demonstrates the desirability of accepting claimant's contention. Desirability, however, is not the criterion by which to construe a specific safety requirement. Because a VSSR is an employer penalty, a specific safety requirement must be strictly construed in the employer's favor. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 545 N.E.2d 1216. Equally important, a specific safety requirement must plainly apprise an employer of its legal duties towards its employees. *State ex rel. Trydle v. Indus. Comm.* (1972), 32 Ohio St.2d 257, 61 O.O.2d 488, 291 N.E.2d 748.

{¶ 13} None of the three cited Administrative Code sections plainly apprises an employer of a duty to guard against accidental expulsion of material. Semantically, both relevant definitions refer to the shielding of an *object from accidental contact*. The choice of the term "object" rather than "person" is significant, particularly when used with the word "from." This connotes that it is the worker who is the actor or initiator of potential contact, not the object, *i.e.,* the machine or its moving parts. Where, as here, material is expelled from a machine, the machine is the "actor," contrary to claimant's interpretation.

{¶ 14} Other Administrative Code sections demonstrate the code authors' ability to protect the employee against expelled material when that is the desired goal. Ohio Adm.Code 4121:1-5-08(D)(5)(a) (swing cutoff saws) and 4121:1-5-08(D)(7)(a) (radial saws) require that the hooded guards be "constructed in such a manner and of such material that [they] will protect the operator from flying

splinters [and] broken saw teeth." There are similar provisions for "portable explosive-actuated fastening tools." There, for example, a "guard" is specifically defined as a device "attached to the muzzle end of the tool which is designed to confine flying particles." Ohio Adm.Code 4121:1-3-12(B)(2). This requirement is echoed in Ohio Adm.Code 4121:1-5-06(C)(1)(a), which requires that "[t]he muzzle end of the [high-velocity] tool shall have a * * * guard * * * designed to confine any flying fragments or particles that might otherwise create a hazard at the time of firing."

{¶ 15} We, therefore, find that the specific safety requirement at issue did not entail an employer's duty to protect against expelled objects. Consistent with the applicable definition of "guard," we find that the spinning machine was appropriately "guarded."

{¶ 16} Claimant alternatively argues that any such guard violated Ohio Adm.Code 4121:1-5-11(D)(9) nevertheless because the guard was not interlocked with the Spin-A-Batch's drive mechanism. Claimant states that the video submitted into the record "showed that the Spin-A-Batch could be activated outside of the guarding of the metal enclosure." The flaw in this argument is the lack of a proximate cause between this asserted violation and decedent's accident. Decedent was not killed by coming into contact with a Spin-A-Batch accidently activated from outside an enclosure. The Spin-A-Batch was simply a motor, meaning that any proper interlock would have permitted only the motor to operate and would not have been the reason for the accident.

{¶ 17} We find, therefore, that the commission did not abuse its discretion in denying a VSSR. As such, we turn last to claimant's assertion that *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, was not satisfied. This argument lacks merit, since the order briefly explains its reasons and the evidence on which it relied.

{¶ 18} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., dissent and would reverse the judgment of the court of appeals.

—————————————