{¶ 1} Veronica Western filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its order in which it denied *Page 2 
her a living maintenance wage loss ("LMWL") from July 12, 2005 through April 17, 2006 and in which it decided that she had voluntarily limited her income. Veronica further requested that the writ order the commission to enter a new order which grants LMWL and determines that she did not voluntarily limit her income.
 {¶ 2} Veronica's employer, the Ohio Department of Transportation ("ODOT"), had joined in the case pursuing a cross-claim in which it seeks to have LMWL denied for Veronica altogether.
 {¶ 3} In accord with Loc.R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes recommendations that Veronica's request for a writ of mandamus be denied and that ODOT's request for a writ be granted.
 {¶ 4} Counsel for Veronica has filed objections to the magistrate's decision. Counsel for the commission has also filed objections, along with a response to Veronica's objections. Counsel for ODOT has filed responses to both sets of objections. The case is now before the court for a full, independent review.
 {¶ 5} Veronica was injured in March 2003 while trimming trees for ODOT. A tree branch being placed into a chopper struck her causing a neck sprain, a contusion on her head, a sprain in the thoracic region of her spine, and cervical radiculitis. A little over a year later, she participated in a vocational rehabilitation program run by the Ohio Bureau of Workers' Compensation ("BWC"). *Page 3 
 {¶ 6} The BWC closed its rehabilitation file on Veronica when she took a job at a gas station. She had a college degree in business administration and a master's degree in criminal justice studies. The BWC later requested that she find a job which better utilized her education.
 {¶ 7} Veronica filed an application for wage loss effective as of the date she took the job at the gas station. The application was supported by a report from her chiropractor which indicated a permanent limitation of four hours per day of work.
 {¶ 8} A district hearing officer ("DHO") granted LMWL compensation following a hearing held October 29, 2004. At that time, Veronica had her master's degree in criminal justice and was seeking work which utilized it, but was having difficulty finding such a job because she had no prior work experience in that field. She claimed she was spending 20 hours a week looking for such a job while working at the gas station earning $6 per hour. She said she had not provided forms supporting her job search because the BWC told her she did not need to do so.
 {¶ 9} On January 3, 2005, the DHO's order was reviewed on appeal by a staff hearing officer ("SHO") who affirmed the order.
 {¶ 10} On March 9, 2006, ODOT filed a motion asking that LMWL compensation be terminated. The motion was denied at the DHO's level but granted in part and denied in part by an SHO. The SHO relied upon the fact that Veronica's chiropractor had not sent supplemental reports every six months to document the restrictions which the chiropractor had earlier reported as permanent. Veronica had found a job in the criminal justice field, but had limited hours and low pay. The SHO found that, but for the *Page 4 
chiropractor's failure to send updated reports, Veronica was entitled to LMWL compensation.
 {¶ 11} ODOT appealed to the commission and Veronica asked for additional review by the commission also. ODOT asserted that Veronica was choosing to limit her income, so she should not receive LMWL compensation. Veronica wanted review of the compensation lost for the time periods her chiropractor had not submitted supplemental reports.
 {¶ 12} Following a two-to-one vote, ODOT prevailed before the commission as to the issue of voluntary limiting of her income to the extent she worked less than 20 hours per week at a rape crisis center. The commission also criticized her rate of pay of $6 per hour at the rape crisis center based upon national studies for rates of pay for social workers and other persons performing similar work.
 {¶ 13} Counsel for Veronica then initiated this mandamus action. Counsel for the commission filed an answer separate. Counsel for ODOT initially filed an answer, but no counterclaim or cross-claim. The cross-claim was not filed until after briefing and after oral argument before the magistrate. The magistrate allowed the cross-claim to be added despite vigorous objections from counsel for Veronica.
 {¶ 14} With this background, we turn to the specific objections to the recommendations in the magistrate's decision. The commission begins its objection with a discussion of the two types of wage loss benefits allowed by the Ohio Revised Code, "regular" wage loss benefits and LMWL. LMWL applies only to persons who have completed a rehabilitation program through the BWC. LMWL is capped at 200 weeks and reduced by any "regular" wage loss payment. The commission asserts, among other *Page 5 
things, that ODOT does not have standing to contest the award of LMWL compensation since the funds which pay LMWL are charged to the surplus fund. The commission also asserts that the magistrate has confused the two forms of wage loss compensation in his analysis and has utilized portions of the Ohio Administrative Code which apply to "regular" wage loss compensation to analyzing LMWL compensation.
 {¶ 15} We agree with the commission's objection as to standing. ODOT does not in fact have standing to contest the commission's ruling because it has demonstrated no detrimental effect on it from the granting of LMWL from the surplus fund. The commission's objection as to that issue is sustained. As a result, we strike ODOT's cross-claim and remove its assertions and request for relief from this case.
 {¶ 16} The commission's second objection asserts that the portion of the Ohio Administrative Code and the statute pertaining to LMWL provide more latitude and discretion to the commission to order payment of LMWL. Ohio Adm. Code 4123-18-21(B) allows the BWC to calculate LMWL based upon a number of specific criteria plus a catchall provision "or other information on the subject." Since Veronica successfully completed a BWC approved rehabilitation program and continued to work with the BWC after the completion, extra flexibility to grant LMWL payment is warranted. We agree with the commission's assertion with respect to LMWL and therefore support the granting of LMWL for the times for which the appropriate medical documentation is present. We therefore believe granting a writ to bar additional payment of LMWL is inappropriate. Both of the commission's objections are sustained.
 {¶ 17} Three objections have been filed on Veronica's behalf: *Page 6 
 1. The magistrate erred in failing to address the Industrial Commission's erroneous application of the Ohio Administrative Code provisions requiring proof of restrictions in order to qualify for Living Maintenance Wage Loss benefits.
 2. The magistrate erred in finding that the Industrial Commission had some evidence to support a finding that Relator voluntarily limited her income such that she was not entitled to Living Maintenance Wage Loss benefits.
 3. The magistrate erred in granting Respondent ODOT's motion for leave to amend its answer to include a cross claim for a writ of mandamus after oral argument had been made, and in granting Respondent ODOT's improper cross claim for a writ of mandamus by finding that the Industrial Commission did not have a basis to award Living Maintenance Wage Loss benefits with an alternative computation.
 {¶ 18} Our ruling on the commission's objections also disposes of Veronica's third objection. Her third objection is rendered moot in particular by our finding ODOT has no standing.
 {¶ 19} The first objection on behalf of Veronica correctly asserts that the magistrate's decision does not directly address the issue of whether a treating physician's report or treating chiropractor's report can be required after the physician or chiropractor has certified a condition is permanent. We now address that issue.
 {¶ 20} Ohio Adm. Code 4123-18-21(A) reads:
 In claims with a date of injury on or after August 22, 1986, the bureau shall make living maintenance wage loss payments to injured workers who complete an authorized vocational rehabilitation plan, successfully return to work, and experience a wage loss while employed.
 (1) The wage loss must be as a consequence of the physical and/or psychiatric limitations caused by the impairments resulting from the allowed conditions in the claim. *Page 7 
 (2) Injured workers requesting living maintenance wage loss payments shall be required to submit medical documentation of the physical and/or psychiatric limitations as referenced in paragraph (A)(1) of this rule at each six month request for continuation of wage loss payments.
 (3) Injured workers requesting wage loss payments shall not voluntarily limit their income by choosing to work fewer hours or at wages below reasonable expectations, if more appropriate jobs are reasonably available within their labor market.
 (a) The bureau may review an injured worker's physical limitations, residual abilities, skills, education, labor market and other factors as necessary in making the determination of voluntary limitation of income.
 (b) An injured worker who wishes to change jobs after the initial receipt of wage loss payments must notify the assigned bureau customer service team. The customer service team will review the criteria set forth in paragraph (A)(3) of this rule to ensure that no voluntary limitation of income will occur.
 {¶ 21} The record before us does not indicate that a request for continuation of wage loss occurred every six months. Veronica, instead, kept in touch with the BWC and provided the information requested by the BWC. Perhaps because she provided a medical report which said her ability to work was capped at four hours per day permanently, she and her counsel did not submit reports to the BWC when nothing changed. However, Ohio Adm. Code 4123-18-21(A) is clear and the commission cannot be faulted for enforcing its clear mandate.
 {¶ 22} Veronica's first objection is overruled.
 {¶ 23} The second objection filed on behalf of Veronica asserts that the commission incorrectly applied Ohio Adm. Code 4123-18-21(A)(3). Veronica kept in touch with the BWC and sought a change of employment when the BWC encouraged her to do *Page 8 
so. To get a job that used her master's degree, she took employment which only allowed 11 hours per week at minimum wage. The job promised more hours and a higher rate of pay in the future.
 {¶ 24} The commission clearly was within its discretion to find that $6 per hour for a person with a master's degree is a wage rate "below reasonable expectations" in a national wage analysis. The commission could have reached a different conclusion because a national average tells little about the market for jobs in the criminal justice field in Findlay, Ohio. Ohio Adm. Code 4123-18-21 (A)(3)(a) allows the BWC to consider real market conditions and to withhold approval of a job change if the BWC feels voluntary limitation of income is occurring. The BWC exercised its discretion in allowing the job change after it encouraged such a job change.
 {¶ 25} However, the commission was within its discretion to find that a person with the education and capabilities of Veronica could find work for more than 11 hours a week a $6 per hour. Her failure to do so was a factual issue the commission was within its discretion to consider in its awarding of LMWL. We are unwilling to overturn that finding by the commission.
 {¶ 26} We overrule the second objection filed on behalf of Veronica.
 {¶ 27} In summary, we sustain both objections to the magistrate's decision filed on behalf of the commission.
 {¶ 28} We overrule the first and second objections filed on behalf of Veronica. Her third objection is moot.
 {¶ 29} As a result of the above, we adopt the findings of fact contained in the magistrate's decision, but not the conclusions of law. As a result of our separate review *Page 9 
of the facts and law, we strike the cross-claim filed on behalf of ODOT. We also refuse to grant a writ of mandamus, leaving the commission's order with respect to the granting of LMWL in place as issued.
Objections sustained in part and overruled in part; writ denied.
 BRYANT and KLATT, JJ., concur. *Page 10 APPENDIX A IN MANDAMUS {¶ 30} In this original action, relator, Veronica Western, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 11 
vacate its order that: (1) denies living maintenance wage loss ("LMWL") compensation for the closed period July 12, 2005 through April 17, 2006, based on a failure to timely submit medical evidence, and (2) determines that relator voluntarily limited her income, and on that basis, awards LMWL compensation beginning April 18, 2006, to be computed on a 20-hour work-week restriction. Relator requests that the writ order the commission to enter a new order that: (1) awards LMWL compensation from July 12, 2005 through April 17, 2006, and (2) determines that relator did not voluntarily limit her income and thus awards LMWL compensation beginning April 18, 2006, to be calculated under the normal rule.
 {¶ 31} In this original action, respondent Ohio Department of Transportation ("ODOT") has filed a cross-claim against the commission. ODOT requests a writ of mandamus ordering the commission to vacate that portion of its order that awards LMWL compensation beginning April 18, 2006, and to enter an order that denies LMWL compensation beginning April 18, 2006, on grounds that relator voluntarily limited her income.
Findings of Fact: {¶ 32} 1. On March 20, 2003, relator sustained an industrial injury while employed as an ODOT highway worker. On that date, relator was involved in trimming trees. The industrial claim is allowed for "sprain of neck; contusion scalp (head); sprain thoracic region; cervical radiculitis," and is assigned claim number 03-813627. The injury occurred when a tree branch being placed into a chipper struck her in the back of the head and the right side of the neck. *Page 12 
 {¶ 33} 2. For the eight-week period April 29 through June 21, 2004, relator participated in a vocational rehabilitation program sponsored by the Ohio Bureau of Workers' Compensation ("bureau"). On June 21, 2004, the bureau issued a vocational rehabilitation closure report, stating:
 * * * At the time of the this [sic] referral the client was taking Celebrex, Neurontin and Baclofen for pain. Pain level was reported to be a 6-8. She c/o right hand weakness and shoulder pain with occasional numbness into the right arm and hand. The client was unable to lift more than 10 lbs, stand or walk longer than 15 minutes, bend below waist level, climb stairs or ladders, reach below waist or above shoulder height. She is right hand dominant. The client has a GED, served 1 year in the Army in ordinance and has a BS in Business Administration. She recently graduated with a masters in Criminal Justice. The client was referred to Voc Works Job Developer, completed JSST and began job search. The FCM worked closely with the client and job developer, meeting at least biweekly with them. Due to current restriction of part time work she was offered and has secured a job in customer service. She hopes in the future to secure work working with abused children and is pursuing that goal with applications to different county and state agencies. She feels sure the POR will release her to full time work if able to secure a sedentary job in that field.
 {¶ 34} 3. On June 21, 2004, relator took a job with AP gas station as a result of her successful completion of the vocational rehabilitation program.
 {¶ 35} 4. On September 10, 2004, the bureau advised relator that she was voluntarily limiting her income by working at the AP gas station. Because relator has a Masters Degree in Criminal Justice, the bureau requested that she find employment where she could utilize her education.
 {¶ 36} 5. On September 17, 2004 relator filed a C-140 application for wage loss compensation. On the form, relator indicated that she was requesting working wage loss compensation beginning June 21, 2004. *Page 13 
 {¶ 37} 6. The September 17, 2004 C-140 application was supported by a Medco-14 "Physician's Report of Work Ability" completed by chiropractor Gary Petro, D.C.
 {¶ 38} 7. Following an October 29, 2004, hearing, a district hearing officer ("DHO") issued an order awarding LMWL compensation from the date of last payment to the October 29, 2004 hearing date and to continue upon submission of evidence of wage loss. The DHO's order states:
 The injured worker's request for Living Maintenance Wage Loss (LMWL) is GRANTED. Therefore, the injured worker's C-140, filed 09/17/2004, is GRANTED to the extent of this order.
 The injured worker sustained a wage loss, as contemplated by Ohio Revised Code due to residual restrictions from allowed conditions in the claim that prevent a return to the former position of employment.
 Specifically, the injured worker has permanent restrictions limiting her to part-time work. Her restrictions indicate that she is able to work only four (4) hours a day, five (5) days a week.
 The injured worker underwent vocational rehabilitation through the Ohio Bureau Of Workers' Compensation (OBWC). Vocational Rehabilitation closed her file on 06/21/2004, because the injured worker had returned to work with their assistance.
 On 08/05/2004, the BWC granted Wage Loss Compensation, beginning 06/21/2004, based upon the return to work. On 09/10/2004, the BWC indicated that the injured worker was not eligible for LMWL because they opined she had voluntarily limited her income. The BWC opined that due to the injured worker having a Masters in Criminal Justice and a Bachelors Degree in Business Administration, that she should not be working at her current job, earning $6.00 an hour.
 At hearing, the injured worker testified that, in fact, she does have a Masters Degree in Criminal Justice. However, the injured worker testified that she received her Masters in *Page 14 
Criminal Justice after the injury in this claim. She has no experience in criminal justice. She does wish to pursue this career. In fact, the injured worker has continued to spend approximately 20 hours a week looking for employment in the criminal justice field. The injured worker testified that she has not submitted wage loss job search forms, as the Vocational Rehabilitation Department told her that she no longer needed to submit these job searches.
 The injured worker further testified that she has the ability to advance within the current job she holds. Apparently, the injured worker has experience in the past within this job market. She has worked as manager/owner in this field in the past.
 Therefore, this hearing officer finds that LMWL Compensation is therefore awarded, from the date last paid to 10/29/2004 and to continue upon submission of wage loss.
 Further, the injured worker is to submit job search forms, showing she is, in fact, spending time looking for higher paying employment within the criminal justice field.
 This order is based on the report of Dr. Petro 07/24/2004; and the injured worker's testimony at hearing.
(Emphasis sic.)
 {¶ 39} 8. Both relator and ODOT administratively appealed the DHO's order of October 29, 2004.
 {¶ 40} 9. In December 2004, relator began part-time employment at the Open Arms Rape Crisis Center.
 {¶ 41} 10. Following a January 3, 2005 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order of October 29, 2004 was being modified. The SHO's order of January 3, 2005 states:
 * * * [T]he Injured Worker's C-86, filed 09/17/2004, is GRANTED to the extent of this order. *Page 15 
 The Injured Worker participated in a Rehabilitation Program, through the Bureau of Workers' Compensation, from 09/15/2003 through 11/30/2003 and then, again, from 04/29/2004 through 06/24/2004. She then "Returned To Work in job goal, per plan of customer service. At present is working part-time, per Physician of Record restrictions", according to the RH-21 Vocation[al] Rehabilitation Closure Report of 06/21/2004.
 The Injured Worker continued to search for a better-paying job, while continuing to work at the job obtained through the Bureau of Workers' Compensation Rehabilitation program (a part-time job as a clerk at the A P Gas Station in Findlay, Ohio).
 She has obtained a better-paying job at the Open Arms Rape Crisis Center in Findlay, Ohio.
 Therefore, it is the finding of this Staff Hearing Officer that the Injured Worker has met her burden of complying with the requirements of O.R.C. Section 4121.67 and Ohio Administrative Code Section 4123-18-21.
 This Staff Hearing Officer has considered and weighed the evidence, as required by Ohio Administrative Code 4123-18-21.
 It is the finding of this Staff Hearing Officer that the injured worker's earnings from 06/21/2004 through 01/03/2005 were less than the injured worker's wages at the time of injured worker's injury with the instant employer.
 It is the further finding of this Staff Hearing Officer that the Claimant has completed a Rehabilitation Training Program and returned to employment, but suffers a wage loss.
 It is the further finding of this Staff Hearing Officer that the difference between injured worker's wages, at the time of injured worker's injury, and injured worker's earnings, for the period from 06/21/2004 through 01/03/2005, was the result of a medical impairment causally related to the industrial injury allowed in this claim, based upon the medical restrictions outlined in the reports of Gary Petro, D.C., dated 07/27/2004. *Page 16 
 It is the finding of this Staff Hearing Officer that the injured worker has restrictions which arose out of this injury which prohibit the injured worker from returning to the former position of employment. (See medical evidence from Gary Petro, D.C.)
 It is the further finding of this Staff Hearing Officer that the injured worker has made a good faith effort to search for suitable employment which is comparably paying work, and had returned to suitable employment, but it was not comparably paying work, for the period from 06/21/2004 through 01/03/2005.
 It is the further finding of this Staff Hearing Officer that the injured worker has otherwise complied with the requirements of Ohio Administrative Code 4123-18-21.
 Therefore, the injured worker is hereby awarded Living Maintenance Wage Loss compensation, pursuant to O.R.C. Section 4121.67 and Ohio Administrative Code 4123-18-21, from 06/21/2004 through 01/03/2004 [sic], and to continue thereafter upon submission of proof which complies with O.R.C. Section 4121.67 and Ohio Administrative Code Section 4123-18-21.
 Said award of Living Maintenance Wage Loss is to be LESS any Working Wage Loss Compensation previously paid (under O.R.C. Section 4123.56(B) and Industrial Commission Rule 4125-1-01) over the same period.
 The remainder of the District Hearing Officer order of the [sic] 10/29/2004 is affirmed in all other respects.
(Emphasis sic.)
 {¶ 42} 11. Apparently, the SHO's order of January 3, 2005 was not administratively appealed.
 {¶ 43} 12. On January 11, 2005, Dr. Petro completed a form captioned "Medical Report" that is used to support applications for wage loss compensation. On the form, Dr. Petro indicated that relator cannot lift or carry over ten pounds and that the restrictions are permanent. *Page 17 
 {¶ 44} 13. On February 17, 2006, at ODOT's request, relator was examined by Michael K. Riethmiller, M.D. His report, dated February 21, 2006, states:
 * * * Ms. Western is able to return to her unrestricted work duties as a highway worker II when considering the allowed conditions in this claim. She has reached maximum medical improvement for this claim since she does not require any further treatment and is able to return to her former work duties without restriction. * * *
 {¶ 45} 14. On March 9, 2006, ODOT moved for retroactive termination of LMWL compensation beginning January 11, 2005. In support, ODOT cited Dr. Riethmiller's report.
 {¶ 46} 15. On April 18, 2006, Dr. Petro completed another Medco-14 form captioned "Physician's Report of Work Ability." On the form, Dr. Petro indicated that relator may return to work with restrictions as of March 31, 2004, and that relator is limited to working four hours per day. Dr. Petro indicated that the restrictions were permanent.
 {¶ 47} 16. On April 21, 2006, a DHO heard ODOT's March 9, 2006 motion to terminate LMWL compensation. Thereafter, the DHO issued an order denying ODOT's motion.
 {¶ 48} 17. ODOT administratively appealed the DHO's order of April 21, 2006.
 {¶ 49} 18. Following a May 30, 2006 hearing, an SHO issued an order that vacates the DHO's order of April 21, 2006. The SHO's order of May 30, 2006 states:
 * * * [T]he C-86 Motion filed by the employer on 03/09/2006, is GRANTED in part and DENIED in part.
 Living Maintenance Wage Loss is not found to have been properly payable from 07/12/2005 through 04/17/2006. Pursuant to Ohio Administrative Code Section 4123-18-21(A)(2) "Injured Workers requesting Living Maintenance *Page 18 
Wage Loss payments shall be required to submit medical documentation of the physical and/or psychiatric limitations as referenced in paragraph (A)(1) of this rule at each six-month request for continuation of Wage Loss payments." The injured worker had restrictions submitted on 01/11/2005. However, no further restrictions were submitted until 04/18/2006. Therefore, the 01/11/2005 restrictions expired on 07/11/2005. Therefore, Living Maintenance Wage Loss was not properly payable from 07/12/2005 until the submission of new restrictions on 04/18/2006.
 Living Maintenance Wage Loss is found to be properly payable from 04/18/2006 through the present and to continue upon submission of proof of Wage Loss and compliance with Ohio Administrative Code Section 4123-18-21.
 The employer argument that the injured worker must seek other employment is not found to be persuasive. The provisions of Ohio Administrative Code Section 4123-18-21 offer no requirement that an injured worker must continue a job search while on Living Maintenance Wage Loss.
 The employer argument that the injured worker is voluntarily limiting her income by choosing to work fewer hours or earn wages below reasonable expectations, is not found to be persuasive. The Bureau Of Workers' Compensation (BWC) has reviewed this matter regarding the injured worker's physical limitations, residual abilities, skills, education, the labor market and other factors. The BWC determined that Living Maintenance Wage Loss was appropriately payable in this matter. The injured worker testified she returned to work at the first position offered, based upon what she was told by the BWC. Subsequently, at the urging of the BWC, she accepted another job which would make use of her master's degree, which she received while in vocational rehabilitation. The injured worker testified that she began work at a low paying position, as the higher paying positions required work experience, which she does not yet have. She testified after three (3) years of experience, both her hours, and her pay will increase.
 The treating physician is found to be persuasive regarding the injured worker's ability to perform at a level less than that required at her prior position of employment. Further, the *Page 19 
treating physician is found to be persuasive that the injured worker is able to work only 20 hours per week.
 While this Staff Hearing Officer has found that the injured worker is not required to seek more hours, or higher paying employment, this Staff Hearing Officer finds the reasoning by the Supreme Court of Ohio in State ex rel Brinkman v. Indus. Comm. of Ohio (1999), 87 Ohio St.3d 178 is applicable in this matter. The Supreme Court in Brinkman found that an injured worker who did not continue to look for other work after getting part-time employment was not precluded from getting Wage Loss Compensation, where the employment earnings would most likely increase as part-time employment would give way to full-time employment at a later date.
 This Staff Hearing Officer finds that Wage Loss was not appropriately payable during the closed period of 07/12/2005 through 04/17/2006, as the injured worker had not complied with the requirements of Ohio Administrative Code Section 4123-18-21(A)(2), which require an injured worker to come forward with physical restrictions at six-month levels for continued payment of Wage Loss.
 This Staff Hearing Officer finds that Living Maintenance Wage Loss is appropriately payable from 04/18/2006 to present and to continue upon submission of proof of Wage Loss, based upon Ohio Administrative Code Section 4123-18-21, which does not require an injured worker to continue a job search. This Staff Hearing Officer finds the BWC approved the injured worker's job change to the current position of employment. Further, this Staff Hearing Officer notes that the injured worker's wages will increase with experience in the new job field, learned while in vocational rehabilitation. Likewise, the injured worker's number of hours worked will increase with experience in the new job field.
 The Staff Hearing Officer reviewed and considered all evidence on file at the time of the hearing.
 This order is based upon restrictions on file, dated 04/18/2006; injured worker's testimony at hearing; and Ohio Administrative Code Section 4123-18-21.
(Emphasis sic.) *Page 20 
 {¶ 50} 19. On June 13, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of May 30, 2006.
 {¶ 51} 20. ODOT also administratively appealed from the SHO's order of May 30, 2006.
 {¶ 52} 21. On June 28, 2006, relator moved for reconsideration of the SHO's refusal order of June 13, 2006.
 {¶ 53} 22. In a so-called interlocutory order mailed September 9, 2006, the commission notified the parties that it had decided to hear ODOT's administrative appeal and that relator's request for reconsideration was being granted, and that the appeal and reconsideration would be heard at the same time.
 {¶ 54} 23. On October 11, 2006, ODOT's appeal from the SHO's order of May 30, 2006 and relator's request for reconsideration were heard by the three-member commission.
 {¶ 55} 24. Following the October 11, 2006 hearing, the commission issued an order stating that the SHO's order was being modified. The commission's order states:
 * * * [T]he C-86 motion, filed 03/09/2006 by the employer requesting termination of living maintenance wage loss compensation is granted to the extent of this order.
 As a preliminary matter, the Commission notes that this hearing was set on two issues. The first issue was the employer's appeal, filed 06/15/2006, from the Staff Hearing Officer order, issued 06/01/2006. The second issue concerned the injured worker's request for reconsideration, filed 06/28/2006, from the Staff Hearing Officer refusal order, issued 06/13/2006. The parties orally waived all arguments on the issue of whether the Commission has continuing jurisdiction to hear this claim. Thereafter, the parties proceeded to argue the merits of the cross appeals filed: the injured worker's appeal, filed 06/08/2006, and the employer's *Page 21 
appeal, filed 06/15/2006, both from the Staff Hearing Officer order, issued 06/01/2006.
 The injured worker received living maintenance payments from 04/28/2004 through 06/20/2004 while performing a job search under the direction of a Bureau of Workers' Compensation (BWC) approved vocational case manager. On 06/21/2004, she took a job with AP Gas Station as a result of her successful completion of a vocational rehabilitation program. On 09/10/2004, BWC advised the injured worker that she was voluntarily limiting her income by working at AP Gas Station. BWC requested that the injured worker seek other employment in one of her fields of expertise. The injured worker has a Bachelor's degree in Business Administration from Bowling Green State University and a Master's Degree in Criminal Justice. The injured worker complied with BWC's request to find employment commensurate with her educational background. The injured worker specifically testified at the Commission hearing that she was requested to utilize her Master's Degree in Criminal Justice.
 As a result of this request, the injured worker applied for and was hired at Open Arms Rape Crisis Center in December of 2004. She further testified that she applied for this position in order to better utilize her Master's degree in Criminal Justice.
 By Staff Hearing Officer order, issued 01/06/2005, the injured worker was awarded living maintenance wage loss from 06/21/2004 through 01/03/2005 and to continue upon submission of documentation of her actual wage loss. This award was premised on a finding that the injured worker had found a better paying job with the Open Arms Rape Crisis Center.
 Dr. Petro, the injured worker's attending physician, submitted restrictions on 01/11/2005. He restricted the injured worker from sitting for more than four hours per day. He opined that the injured worker may "frequently lift up to five pounds and occasionally lift six to ten pounds and never lift more than 10 pounds." Furthermore, according to Dr. Petro, the injured worker may "frequently bend and occasionally squat, crawl, climb, and reach." Dr. Petro indicated that these restrictions are permanent. *Page 22 
 No other restrictions were submitted to the file until 04/18/2006. On this date, Dr. Petro restricts the injured worker to working four hours per day, in addition to the aforementioned restrictions.
 On 03/09/2006, the employer filed a motion to terminate the injured worker's living maintenance wage loss, alleging that the injured worker was voluntarily limiting her income and that the continuation of these benefits was not supported by the medical evidence on file. The Staff Hearing Officer order denied the request for living maintenance wage loss for the period of 07/12/2005 through 04/17/2006 on the basis that the injured worker had not submitted evidence of physical restrictions for this period. The Staff Hearing Officer, however, found that living maintenance wage loss was properly payable from 04/18/2006 forward based on new restrictions submitted that date, and on a finding that BWC had approved of the injured worker's change of jobs from AP Gas Station to the Open Arms Rape Crisis Center. The Staff Hearing Officer also specifically found that the injured worker's hours and wages will increase with experience in the new job field.
 With regard to her job at the Open Arms Rape Crisis Center, the injured worker testified that she began work at a low paying position, as the higher paying positions required work experience, which she does not yet have. She further testified that after three years of experience, both her hours and pay will increase. She is currently working ten to eleven hours per week at the rate of $6 per hour. The injured worker testified that she does not work a set schedule. Instead, her hours are determined at the beginning of each week, based on need. She essentially does paperwork and observes the more experienced social workers in their jobs.
 The Commission finds that living maintenance wage loss remains denied for the closed period of 07/12/2005 through 04/17/2006 based on a finding that the injured worker did not comply with Ohio Adm. Code 4123-18-21(A)(2). This section provides that:
 "injured workers requesting living maintenance wage loss payments shall be required to submit medical documentation of the physical and/or psychiatric limitations as referenced in paragraph (A)(1) of this rule at each six-month request for continuation of wage loss payments." Emphasis added. *Page 23 
 As correctly pointed out by the Staff Hearing Officer, the injured worker had restrictions submitted on 01/11/2005. However, no further restrictions were submitted until 04/18/2006. Therefore, the 01/11/2005 restrictions expired on 07/11/2005. Accordingly, living maintenance wage loss remains denied from 07/12/2005 through 04/17/2006. New restrictions by Dr. Petro were submitted on 04/18/2006.
 The injured worker's counsel argued that Dr. Petro, the injured worker's attending physician, had certified ongoing disability from 03/31/2004 through 04/18/2006 on various forms demonstrating restrictions on the injured worker at all times that she requested living maintenance wage loss. This argument is not well taken. The Commission finds that the Ohio Administrative Code does not provide any exceptions to the six-month requirement. Indeed, the requirement to submit medical documentation every six months is mandatory.
 The Commission finds living maintenance wage loss remains payable from 04/18/2006 through 10/11/2006, the date of the Commission hearing, pursuant to evidence of wage loss and compliance with Ohio Adm. Code 4123-18-21 and pursuant to the Staff Hearing Officer order issued 06/01/2006.
 Furthermore, living maintenance wage loss is ordered to be paid and calculated based on 20 hours of work per week from the date of the hearing forward (10/11/2006) and to continue upon submission of proof of wage loss and compliance with Ohio Adm. Code 4123-18-21. Stated otherwise, the amount of wage loss compensation payable will be determined as if she had worked 20 hours per week, unless her actual hours worked exceed 20 hours per week.
 It is the Commission's finding that the injured worker has voluntarily limited her income by working fewer hours than the restrictions imposed on her by Dr. Petro. In making this finding, the Commission relies on Ohio Adm. Code 4123-18-21(A)(3) and on the 04/18/2006 restrictions by Dr. Petro.
 {¶ 56} First, Ohio Adm. Code 4123-18-21(A)(3) provides as follows:
 "Injured workers requesting wage loss payments shall not voluntarily limit their income by choosing to work fewer hours or at wages below reasonable expectations, if more appropriate *Page 24 
jobs are reasonably available within their labor market."
 The Commission notes that the 04/18/2006 report of Dr. Petro restricts the injured worker to working 4 hours per day; however, the same report does not place any restrictions on the number of days per week the injured worker can work. The Commission therefore finds that the injured worker is capable [of] working 5 days per week for a total of 20 hours. It is undisputed that the injured worker is working only 10 to 11 hours per week. The Commission recognizes the difficult situation that the injured worker is in, by virtue of the fact that she has followed the recommendations of the vocational case manager in utilizing her Master's Degree in Criminal Justice and obtaining a job at Open Arms Rape Crisis Center; however the Commission is also cognizant of the fact that the injured worker is working only 10 to 11 hours per week. The Commission also finds that there is a lack of persuasive documentary evidence that the injured worker has attempted to find another job to supplement her job with the Open Arms Rape Crisis Center. The Commission finds that the injured worker is therefore voluntarily limiting her "income by choosing to work fewer hours or at wages below reasonable expectations, if more appropriate jobs are reasonably available within . . . (her) labor market." She is working fewer hours than the restrictions imposed by Dr. Petro.
 The Commission further finds that there are appropriate jobs available within her job market. The Commission relies on the vocational assessment of Craig Johnston, dated 03/30/2006 which outlines a number of employment options for the injured worker and which supports the conclusion that based upon her age of 37, her education and past job experience, the injured worker is voluntarily underemployed working on average eleven (11) hours per week at six dollars ($6.00) per hour. As a resident of Findlay, Ohio, the injured worker has access to job markets in Findlay, Lima, and Toledo. In his report, Mr. Johnston states:
 "The average wages nationally for this occupation is $24,270, or the equivalent of $11.66 per hour. Even the lowest 10% of wages for all social service aides was $7.55. When compared to all other social service assistants in the country. Ms. Western is making at or near the lowest income. Given her higher education, the claimant should at *Page 25 
least approximate, if not exceed, the median annual earnings of $11.66 per hour. She could achieve this wage with a good faith job search."
 Therefore, given the fact that the injured worker is working less hours than recommended by Dr. Petro and the fact that the injured worker is earning wages "below reasonable expectations," the Commission finds that she is voluntarily limiting her income. However, given the persuasive evidence that the injured worker has followed the recommendations of BWC approved vocational manager and switched jobs from the AP Gas Station to Open Arms Rape Crisis Center in order to utilize her Master's Degree in Criminal Justice, the Commission declines to terminate living maintenance wage loss and instead orders that this compensation continue and be computed based on a 20-hour work week.
 {¶ 57} 25. On April 19, 2007, relator, Veronica Western, filed this mandamus action. Thereafter, ODOT filed a cross-claim against the commission.
Conclusions of Law: {¶ 58} Two main issues are presented: (1) whether the commission abused its discretion in determining that relator voluntarily limited her income while employed at the Open Arms Rape Crisis Center beginning December 2004, and (2) whether the commission abused its discretion in awarding LMWL compensation beginning April 18, 2006, to be computed on a 20-hour work week.
 {¶ 59} The magistrate finds: (1) the commission did not abuse its discretion in determining that relator voluntarily limited her income while employed at the Open Arms Rape Crisis Center beginning December 2004, and (2) the commission did abuse its discretion in awarding LMWL compensation beginning April 18, 2006, to be computed on a 20-hour work week. *Page 26 
 {¶ 60} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. It is also the magistrate's decision that this court grant ODOT's request for a writ of mandamus.
 {¶ 61} Turning to the first issue, which is raised by relator, Ohio Adm. Code 4123-18-21 is captioned "Wage loss payments to injured workers who complete rehabilitation programs." The rule states in part:
 (A) In claims with a date of injury on or after August 22, 1986, the bureau shall make living maintenance wage loss payments to injured workers who complete an authorized vocational rehabilitation plan, successfully return to work, and experience a wage loss while employed.
 (1) The wage loss must be as a consequence of the physical and/or psychiatric limitations caused by the impairments resulting from the allowed conditions in the claim.
 (2) Injured workers requesting living maintenance wage loss payments shall be required to submit medical documentation of the physical and/or psychiatric limitations as referenced in paragraph (A)(1) of this rule at each six month request for continuation of wage loss payments.
 (3) Injured workers requesting wage loss payments shall not voluntarily limit their income by choosing to work fewer hours or at wages below reasonable expectations, if more appropriate jobs are reasonably available within their labor market.
 {¶ 62} In State ex rel. Brinkman v. Indus. Comm. (1999),87 Ohio St.3d 171, William Brinkman, a Columbus policeman, sustained multiple injuries in a 1994 work-related car accident. Because Brinkman was not physically able to return to his former job as a policeman, he eventually obtained, in February 1995, a part-time job paying $20 per hour at Anheuser-Busch, Inc. According to Brinkman, Busch told him that part-time workers were given preference for full-time positions as they became available. *Page 27 
 {¶ 63} Brinkman applied for working wage loss compensation but the commission denied his request on grounds that he was not currently looking for work.
 {¶ 64} In issuing the writ of mandamus, the Brinkman court explained:
 The commission also characterized claimant's perceived income limitation as voluntary because claimant did not continue to look for full-time work after getting the job at Busch. We have never specifically addressed the question of continuing a full-time job search after acquisition of part-time work. We find particularly appealing Florida's approach to this question due to its judiciary's balance between the normal part-time concerns and economic reality.
 In Stahl v. Southeastern X-Ray
(Fla.App.1984), 447 So.2d 399, the former employer alleged that claimant's failure to look for a better-paying job after accepting other minimum-wage employment constituted a voluntary income limitation. The court disagreed, writing:
 "Whether the acceptance of a particular job with lower earnings amounts to voluntary limitation should be determined based on the enumerated factors [physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence and availability of jobs] and not based simply on a requirement for continued diligent search by claimant after completion of his normal daily work schedule." Id. at 401.
 Rather than focusing simply on income, the Florida court viewed the claimant's employment situation broadly. Within the first three months of work, the claimant received a forty cent per hour raise and was given increased responsibility. When asked why he had stopped looking for other work, claimant responded that " `[m]y boss has indicated that I have a future there, so I feel that I have a good job right now and it would be silly for me to leave a good thing.' " Id. at 402. The court agreed, concluding that "[t]he deputy's order would compel claimant to forfeit any present or future commitment to a full-time job which appears to be appropriate in all ways other than presently diminished earnings." Id.
 In this case, the commission is also asking the claimant to "leave a good thing." Stahl is admittedly distinguishable in *Page 28 
that post-injury employment was full-time, not part-time, but whether that does or should excuse a broader-based analysis is questionable. Wage-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired.
Id. at 173-174.
 {¶ 65} Here, the SHO's order of May 30, 2006 determined that relator was not voluntarily limiting her income. Citing Brinkman, the SHO explained that relator had testified that "after three (3) years of experience, both her hours and her pay will increase."
 {¶ 66} Moreover, the SHO's order of May 30, 2006 held that Ohio Adm. Code 4123-18-21 does not require a claimant to conduct a job search while being paid LMWL compensation.
 {¶ 67} The three-member commission, following the October 11, 2006 hearing, issued an order stating that the SHO's order was being modified. In fact, the commission rejected the SHO's finding that relator had not voluntarily limited her income. The commission determined that relator was working fewer hours than her medical restrictions allowed and that the job was paying wages below reasonable expectations. The commission relied in part upon the vocational assessment of Craig Johnston who determined that the average wage nationally for the occupation relator was seeking to enter is paid at $11.66 per hour, while relator is receiving only $6 per hour. *Page 29 
 {¶ 68} Here, relator argues that her acceptance of a part-time position with the Open Arms Rape Crisis Center working on average 11 hours per week at $6 per hour is not a voluntary limitation of income even though she has not conducted a job search.
 {¶ 69} It is the commission that weighs the evidence. Relator's argument is, in effect, an invitation that this court reweigh the evidence for the commission. It is clear that the commission weighed the factors before it. Moreover, the commission's reliance upon the report of Craig Johnston provided it with some evidence, if not compelling evidence, that relator was voluntarily limiting her income as to her rate of pay.
 {¶ 70} Relator further posits, as did the SHO's order of May 30, 2006, that Ohio Adm. Code 4123-18-21 does not require her to conduct a job search. Relator's position lacks merit. Ohio Adm. Code 4123-18-21(A)(3) provides that injured workers shall not voluntarily limit their income. Ohio Adm. Code 4123-18-21 (A)(1) provides that the wage loss must be the consequence of the impairments resulting from the allowed conditions. Obviously, a job search would be the appropriate way to show that one is not voluntarily limiting one's income in this situation.
 {¶ 71} The second issue is whether the commission abused its discretion in awarding LMWL compensation beginning April 18, 2006, to be computed on a 20-hour work week. This issue is raised by ODOT in its cross-claim.
 {¶ 72} Given that the commission determined that relator is choosing to work fewer hours than her medical restrictions permit and is receiving wages below reasonable expectation, there is no basis to award LMWL compensation at all.
 {¶ 73} Ohio Adm. Code 4125-1-01(F) is captioned "Computation of wage loss." Ohio Adm. Code 4125-1-01(F) provides: *Page 30 
 (1) Unless otherwise provided in paragraph (H)(3) of this rule, diminishment of wages shall be calculated based on the:
 (a) Claimant's average weekly wage at the time of the injury or at the time of the disability due to occupational disease in accordance with the provisions of section 4123.61 of the Revised Code; and
 (b) The claimant's present earnings.
 * * *
 [3](b) If the adjudicator finds that the claimant has returned to employment but has voluntarily limited the number of hours which he is working, and that the claimant is nonetheless entitled to wage loss compensation, the adjudicator, for each week of wage loss compensation requested by the claimant, shall determine: the number of hours worked by the claimant in the employment position to which he has returned, and the hourly wage earned by the claimant in the employment position to which he has returned. In such a case, the adjudicator shall order wage loss compensation to be paid at a rate of sixty-six and two-thirds per cent of the difference between:
 (i) The weekly wage the claimant would have earned in the former position of employment if the claimant had worked only the number of hours the claimant actually worked each week in the employment position to which the claimant returned; and
 (ii) The weekly amount the claimant actually earned in the employment position to which he returned.
 (iii) In situations where the adjudicator finds that the claimant has returned to employment and has voluntarily limited the number of hours which he is working, and that the claimant is nonetheless entitled to wage loss compensation, but that paragraphs (F)(3)(b)(i) and (F)(3)(b)(ii) of this rule are not directly applicable, the adjudicator shall have the discretion to establish a number of hours to be utilized in the calculation of wage loss compensation that is not unreasonable, unconscionable or arbitrary. *Page 31 
 {¶ 74} Here, the commission, in its October 11, 2006 order, determined that relator is not only voluntarily limiting the number of hours she is working, but she is also accepting wages at an hourly rate below reasonable expectations.
 {¶ 75} Consequently, Ohio Adm. Code 4125-1-01(F)(3)(b) does not apply because that provision permits an alternative computation of wage loss only if the claimant has voluntarily limited the number of hours she is working. See State ex rel. Bowen v. Do It Best Corp.,101 Ohio St.3d 392, 2004-Ohio-1670.
 {¶ 76} Moreover, Ohio Adm. Code 4125-1-01(F)(3)(b)(iii) does not apply. That provision applies only when the adjudicator finds that the claimant has voluntarily limited the number of hours she is working.
 {¶ 77} In short, there is no authority for the commission to order the payment of LMWL compensation based on a 20-hour work week in this situation because relator's current hourly rate of pay is below reasonable expectations.
 {¶ 78} One further issue needs to be addressed. As the commission's order of October 11, 2006 indicates, the commission applied Ohio Adm. Code 4123-18-21 (A)(2) to deny LMWL compensation for the closed period July 12, 2005 through April 17, 2006. The commission held that relator's medical restrictions expire on July 11, 2005, and that Dr. Petro's restrictions of April 18, 2006 did not retroactively save medical eligibility. Relator challenges the commission's decision on this issue here.
 {¶ 79} Given that the commission did not abuse it discretion in determining that relator voluntarily limited her income as of December 2004 when she began her employment at the Open Arms Rape Crisis Center, there is no basis for LMWL *Page 32 
compensation for the closed period July 12, 2005 through April 17, 2006, regardless of whether the commission properly applied Ohio Adm. Code 4123-18-21(A)(2).
 {¶ 80} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. It is further the magistrate's decision that this court grant ODOT's request for a writ of mandamus to the extent that the commission is ordered to vacate that portion of its October 11, 2006 order that awards LMWL compensation beginning April 18, 2006, and to enter an amended order that denies LMWL compensation beginning April 18, 2006. *Page 1