[Cite as *State ex rel. Johnson v. Indus. Comm.*, 2014-Ohio-2281.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| The State of Ohio ex rel. Donte Johnson, | : | |
| Relator, | : | |
| v. | : | No. 13AP-558 |
| The Industrial Commission of Ohio and New Image Building Services, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 29, 2014

*Shapiro, Marnecheck & Palnik,* and *Mathew A. Palnik*, for relator.

*Michael DeWine*, Attorney General, and *Andrew J. Alatis*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Relator, Donte Johnson, has filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant him an award for a violation of a specific safety requirement ("VSSR").

{¶ 2} In accord with Loc.R. 13 of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision containing detailed findings of fact and conclusions of law, appended hereto. The magistrate's decision includes a recommendation that we grant a limited writ of

mandamus which compels the commission to vacate its denial of an award based upon a VSSR and revisit the merits of the application.

{¶ 3} Counsel for the commission has filed objections to the magistrate's decision. Counsel for Donte Johnson has filed a memorandum in response. The case is now before the court for a full, independent review.

{¶ 4} The magistrate found that two different sections of the Ohio Administrative Code potentially applied, Ohio Adm.Code 4123:1-5-07(C) and 4123:5-07(G). The staff hearing officer ("SHO") had found no section of the Ohio Administrative Code applicable.

{¶ 5} Counsel for the commission argues in the objections that a vacuum cleaner is not a hand-held powered tool for purposes of the administrative code where the major problem is the deteriorated extension cord which had to be plugged directly into the vacuum cleaner for the vacuum cleaner to be operable.

{¶ 6} Counsel for the commission also argues that the injury did not occur in a workshop or factory, but in a school where Donte Johnson was performing cleaning services.

{¶ 7} Ohio Adm.Code 4123:1-5-07(C) reads:

> General requirement.
>
> All hand tools and hand-held portable powered tools and other hand-held equipment whether furnished by the employee or the employer shall be maintained in a safe condition, free of worn or defective parts.

{¶ 8} The extension cord was hand-held equipment while being carried to the vacuum cleaner, while being plugged into the vacuum cleaner, and while the vacuum cleaner was being operated. The extension cord here was not in a safe condition and not free of worn or defective parts. To that extent, Ohio Adm.Code 4123:1-5-07(C) applies.

{¶ 9} The SHO who heard this before the commission did not address the issue of whether working in a school constituted working in a workshop or factory. We agree with our magistrate's conclusion that the commission should address the issue first.

{¶ 10} We overrule the objections filed on behalf of the commission. We therefore adopt the findings of fact in the magistrate's decision. We also adopt the conclusions of law in the magistrate's decision and with the conclusion that this matter be remanded for

a determination of whether the working environment constituted a workshop or factory and whether the equipment here was maintained in accordance with Ohio Adm.Code 4123:1-5-07(C). As a result, we grant a limited writ of mandamus to allow the commission to address the issues surrounding workshops and factories and the issues regarding Ohio Adm.Code 4123:1-5-07(C).

*Objections overruled;*
*limited writ granted.*

SADLER, P.J., and BROWN, J., concur.

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Donte Johnson, | : | |
| Relator, | : | |
| v. | : | |
| | : | No. 13AP-558 |
| The Industrial Commission | : | |
| of Ohio and New Image | | (REGULAR CALENDAR) |
| Building Services, Inc., | : | |
| Respondents. | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on February 20, 2014

---

*Shapiro, Marnecheck & Palnik,* and *Mathew A. Palnik*, for relator.

*Michael DeWine*, Attorney General, and *Andrew J. Alatis*, for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 11} In this original action, relator, Donte Johnson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for an additional award for violation of a specific safety requirement ("VSSR") and to enter an order granting the application.

Findings of Fact:

{¶ 12} 1. On March 5, 2012, relator received an electrical shock while employed as a cleaner for respondent New Image Building Services, Inc. ("employer"). The electrical shock occurred when relator plugged an extension cord into an electrical outlet in a building that he was cleaning with an electric portable backpack vacuum. The industrial claim (No. 12-809128) is allowed for:

> Effects electric current; right skin sensation disturbance.

{¶ 13} 2. On July 18, 2012, relator filed an application for a VSSR award.

{¶ 14} 3. The VSSR application prompted an investigation by the Safety Violations Investigative Unit ("SVIU") of the Ohio Bureau of Workers' Compensation ("bureau").

{¶ 15} 4. The SVIU investigator conducted a telephone conference with Justin Shew, the employer's director of environmental, health, safety and compliance/accounts manager and with Ginger Vallie, the employer's area manager.

{¶ 16} 5. On October 10, 2012, the SVIU investigator issued a report, stating:

> [Two] Mr. Shew stated New Image Building Services Inc. no longer holds the cleaning contract of the building where Mr. Johnson's injury occurred. At the time of the injury Mr. Johnson was operating a Super Coach, 9.9 AMP electrical vacuum and was provided with a means of grounding. The electrical cord used with the vacuum was a fifty foot (50') sixteen (16) gauge extension cord. The electrical cord involved in the incident was removed from the building and discarded after the incident.
>
> [Three] The employer explained at the time of the incident Mr. Johnson was vacuuming the first floor hallway next to the cafeteria. Ms. Vallie explained she believes multiple extension cords were used by Mr. Johnson to save him time when he vacuumed, possibly causing the injury to Mr. Johnson. To her knowledge Mr. Johnson was not vacuuming the staircase, explained Ms. Vallie. It was further stated by Ms. Vallie after the incident Mr. Johnson reported to her that there was a prong missing from the electrical cord. She was not aware of the missing prong prior to the incident, explained Ms. Vallie.
>
> [Four] New Image Building [S]ervices has equipment inspected by cleaners or the site supervisor each Friday. Inspections are documented on a monthly basis, stated Ms. Vallie. Investigator Luker requested the employer send documentation of the monthly inspections via fax or email. As

of the writing of this report Investigator Luker has not received a copy of the monthly inspections. The employer stated the equipment was in good working condition and there were no prior issues with the electrical cord or the vacuum used by Mr. Johnson at the time of his injury. If there had been an issue with the electrical cords additional ones were kept at the building Mr. Johnson was working at the time of the incident or employees could call her at anytime, further stated Ms. Vallie.

[Five] Mr. Johnson's position at the time of the incident was a cleaner and his job duties entailed collecting trash, dusting and vacuuming * * *. The employer stated Mr. Johnson's training consisted of on-the-job training conducted by Wallace Williams, and lasted approximately three days. The employer further stated Mr. Johnson's training was on-going throughout his employment * * *. The employer believes Mr. Johnson understood his job duties at the time of his injury. Per the employer, at the time of Mr. Johnson's incident he was not required to wear personal protective equipment * * *.

[Six] An affidavit was obtained from claimant Donte Johnson on September 12, 2012 * * *. Mr. Johnson stated at the time of his injury he was working at the BASF building vacuuming a stairwell. There was no outlet in the stairwell so he had to use an outlet outside of staircase, stated Mr. Johnson. It was further stated by Mr. Johnson as soon as he plugged the extension cord in, a surge kicked out and went through his right arm * * *. The extension cord he was using was in poor condition and missing a ground prong with electrical tape wrapped around the cord, stated Mr. Johnson * * *. Mr. Johnson stated he reported to management on multiple occasions the cords were in poor condition. Johnson stated, it appeared management would not correct the issues * * *. Mr. Johnson believes the vacuum he used was old but was in relatively good condition * * *.

{¶ 17} 6. As indicated in the SVIU report, the SVIU investigator obtained an affidavit from relator dated September 12, 2012. The affidavit states:

[Two] I began working at New Image Building Services February 2012 as a cleaner; this was my position at the time of my injury. My duties included cleaning and vacuuming.

[Three] I received on the job training for approximately two days and was conducted by my supervisor. I was never trained on electrical safety.

[Four] I was not required to wear any personal protective equipment at the time of my incident.

[Five] At the time of my incident I was working at the BASF building on Chargrin BLVD for New Image Building Services. I was in the stairwell behind the security desk, but at basement level of the staircase. There were no close outlets for the electric portable backpack vacuum (brand unknown) in the staircase; therefore, I had to use an outlet outside of staircase located approximately ten to fifteen steps from the lunch room on the left wall (if you[r] back is facing towards the lunch room). I plugged the extension cord into the outlet and as soon as I plugged it in, with vacuum, a surged [sic] kicked out and went through my right arm and I fell back.

[Six] The extension cord I was using was in poor condition; it was missing the ground prong. The cord was not provided with a means of grounding. It also had electrical tape wrapped around the middle of the cord. This was the best cord available to me the day of the incident; the other cords available to me were in even worse condition.

[Seven] We always used different cords depending on what was available while we were working. There were past experiences when I would plug in an electrical cord and it would make a crackle sound.

[Eight] I told management in the past the cords were not very safe to use and not in good working condition. I specifically [sic] to Wallace Williams, my first supervisor, and had conversations with Doris Satawhite, my last supervisor regarding concerns over condition of equipment. I was told if equipment is in poor condition you can report it to a supervisor. When condition of equipment was reported it appeared management would not correct the issues.

[Nine] The electrical cords were provided by New Image Building Services, but they were kept at the Chagrin BASF building where I was cleaning. Electrical cords were kept in our storage area which was in hallway near lunchroom. Electrical plugs were stored inside of a cardboard box located in a green utility cabinet.

> [Ten] After my incident the head manager over various buildings, Virginia (AKA: Ginger) (last name unknown), came in and removed all the other extension cords. She did not remove the cord which caused my injury. Mike (Last Name Unknown), head maintenance person, used the cord which caused my injury as an example of what cords should not be used; the cord involved in my incident was discussed at a safety meeting March 7, 2012.
>
> [Eleven] I believe after my incident they added a new outlet in the stairwell. After my incident the outlet involved in my injury was changed immediate [sic].

{¶ 18} 7. Attached to the SVIU report as an exhibit are vacuum specifications and information provided by the manufacturer of the Super CoachVac/Super CoachVac HEPA that relator was using at the time of his injury.

{¶ 19} Under the list of specifications, the document states:

> Includes: a 1 1/2' static-dissipating vacuum hose, a 50' extension cord and two Intercept Micro Filters.

{¶ 20} 8. On April 10, 2013, a staff hearing officer ("SHO") heard the VSSR application. The hearing was conducted via telephone and was recorded and transcribed for the record.

{¶ 21} 9. During the April 10, 2013 hearing, the following testimonial exchange occurred between relator and his counsel:

> Q. * * * [H]ow long had you been working at New Image Building Services?
>
> A. Close to a year.
>
> Q. And you had used this piece of equipment without incident pretty much every day you worked?
>
> A. Yes.
>
> Q. Now, it's my understanding according to the documentation that was provided by your employer that the vacuum cleaner doesn't have a power cord of its own, is that correct?

A. Correct.

Q. So how would you plug the vacuum cleaner into the wall?

A. Basically, we had a box of extension cords that was in our utility closet, and we would pick one up and attach it to the back of one.

Q. And this is just how the vacuum cleaner was sold; is that correct?

A. Yes.

Q. Now, the power cords, those were provided by New Image, correct?

A. Correct.

Q. And the vacuum cleaners obviously could not work without the power cords?

A. Correct.

(Tr. 11-12.)

{¶ 22} 10. During the April 10, 2013 hearing, relator's counsel stated to the hearing officer:

> [Mr. Palnik]: And if you look at the material that was provided by the employer that was in the investigation packet, it shows the type of backpack vacuum that Mr. Johnson was using at the time that he was injured. That backpack vacuum is not sold with a power cord, okay. There's actually a picture of it.
>
> And on the second page of the material is a listing of miscellaneous equipment that you can purchase along with it, and one of those things is a 50 foot, 16 gauge extension cord yellow. Well, in this case, it's my understanding, based on the material that the employer has submitted, that they didn't buy those. It's not in the bill of sale along with the vacuum.
>
> They chose to use their own power cords to power the vacuum, and it's my contention that when you do that, that then becomes part of the vacuum, okay, because the vacuum cannot work without the power cord.

(Tr. 24-26.)

{¶ 23} 11. Following the April 10, 2013 hearing, the SHO mailed an order on May 2, 2013 denying the VSSR application. The SHO's order of April 10, 2013 explains:

> It is the finding of the Staff Hearing Officer that the Application for Violation of a Specific Safety Requirement be denied for the reason that no specific safety requirement Code section cited applies to this injury. The Injured Worker was injured plugging an extension cord into a wall socket. He was employed as a cleaner and was vacuuming the first floor hallway in a building where the Employer had a cleaning contract. The Injured Worker was using an extension cord that had the third "fat" prong missing and had tape wrapped around the cord. He was treated at Metro hospital, by a medical doctor and a chiropractic physician and had a consultation with a neurologist. The claim has been allowed. The Injured Worker has requested an additional award in Violation of a Specific Safety Requirement.
>
> The following sections are alleged to have been violated:
>
> 4123:1-5-07 (C)
> 4123:1-5-07 (G)
>
> 4123:1-5-07 is under the workshops and factories code section and concerns Hand tools, hand-held portable powered tools, other hand-held equipment and portable safety containers.
>
> 4123:1-5-07 (C) is a general requirement that states: "All hand tools and hand-held portable powered tools and other hand-held equipment whether furnished by the employee or the employer shall be maintained in a safe condition, free of worn or defective parts."
>
> This section does not apply because an extension cord is not a hand tool and it is not a hand-held power tool or other hand-held equipment.
>
> 4123:1-5-07 (G) concerns grounding and states: "All electrically powered portable tools with exposed noncurrent-carrying metal parts shall be grounded. Portable tools protected by an approved system of double insulation, or its equivalent, need not be grounded. Where such an approved system is employed the equipment shall be distinctively marked."

The Injured Worker was operating a Super Coach/vacuum cleaner that is described in a manufacturer's brochure a copy of which is in the record as SVIU Exhibit #5. Under Spec the brochure states that this vacuum cleaner comes with a static-dissipating vacuum hose and a 50' extension cord. However, according to the testimony, this accident occurred as a result of a faulty extension cord and there was no cord that was a part of the vacuum cleaner. The extension cords were purchased separately and were attached to the vacuum cleaner by the Injured Worker. This particular cited section applied to electrical powered portable tools and not extension cords.

It is the finding of the Staff Hearing Officer that the Injured Worker has not proven by a preponderance of the evidence that either of the cited code sections are applicable or have been violated. Therefore, there is no need to consider that it has not been established that the Injured Worker was in a workshop or a factory when he was injured. Black's Law Dictionary defines a workshop and factory as a "room or place wherein power driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise."

Based on the above, as well as a careful consideration of all evidence in file and at the hearing, the Staff Hearing Officer concludes that the Injured Worker has not proven by a preponderance of the evidence that the Employer has violated a specific safety requirement. Therefore, the Application for Violation of a Specific Safety Requirement is denied.

{¶ 24} 12. Relator moved for rehearing pursuant to Ohio Adm.Code 4121-3-20(E).

{¶ 25} 13. On June 25, 2013, another SHO mailed an order denying relator's motion for rehearing. The SHO's order explains:

It is hereby ordered that the Motion for Rehearing filed 05/20/2013 be denied. The Injured Worker has not submitted any new and relevant evidence nor shown that the order issued 05/02/2013 was based on an obvious mistake of fact or on a clear mistake of law. Applying the mandate of strict construction of the rules in favor of the Employer, no obvious or clear mistake of law or fact is found.

{¶ 26} 14. On June 26, 2013, relator, Donte Johnson, filed this mandamus action.

Conclusions of Law:

{¶ 27} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 28} Chapter 4123:1-5 of the Ohio Adm.Code is captioned "Workshop and Factory Safety."

{¶ 29} Ohio Adm.Code 4123:1-5-01(B) is captioned "Definitions." Thereunder, the following definitions appear:

> (67) "Ground":
>
> (a) "Ground connection": the equipment used in establishing a path between an electric circuit or equipment and earth. A ground connection consists of a ground conductor, a ground electrode, and the earth which surrounds the electrode.
>
> (b) "Grounded": connected to earth by a ground connection.
>
> (c) "Grounded effectively": connected to earth through a ground connection or connections of sufficiently low impedance and having sufficient current-carrying capacity to prevent the building up of voltages which may result in undue hazard to connected equipment or to employees.
>
> (68) "Grounding conductor": a conductor which is used to connect the equipment or the wiring system with a grounding electrode or electrodes.

{¶ 30} Ohio Adm.Code 4123:1-5-07 is captioned "Hand tools, hand-held portable powered tools, other hand-held equipment and portable safety containers." Thereunder, the following two specific safety rules provide:

> (C) General requirement.
>
> All hand tools and hand-held portable powered tools and other hand-held equipment whether furnished by the employee or the employer shall be maintained in a safe condition, free of worn or defective parts.
>
> * * *
>
> (G) Grounding.

All electrically powered portable tools with exposed noncurrent-carrying metal parts shall be grounded. Portable tools protected by an approved system of double insulation, or its equivalent, need not be grounded. Where such an approved system is employed the equipment shall be distinctively marked.

## Basic VSSR Law

{¶ 31} It is well-settled that a VSSR award is deemed a penalty to the employer subject to the rule of strict construction with all reasonable doubts concerning the interpretation of the safety standard to be construed against the applicability of the standard to the employer. *State ex rel. Watson v. Indus. Comm.*, 29 Ohio App.3d 354 (10th Dist.1986); *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989).

{¶ 32} It is also firmly established that the determination of disputed factual situations as well as the interpretation of a specific safety requirement is within the final jurisdiction of the commission, and subject to correction in mandamus only upon a showing of an abuse of discretion. *State ex rel. Roberts v. Indus. Comm.*, 10 Ohio St.3d 1 (1984); *State ex rel. Allied Wheel Prods., Inc. v. Indus. Comm.*, 166 Ohio St. 47 (1956); *State ex rel. Volker v. Indus. Comm.*, 75 Ohio St.3d 466 (1996).

{¶ 33} Of course, the commission's authority to interpret its own safety rules is not unlimited. Strict construction does require that the commission's interpretation be reasonable. *State ex rel. Martin Painting & Coating Co. v. Indus. Comm.*, 78 Ohio St.3d 333, 342 (1997). The commission may not effectively rewrite its own safety rules when it interprets them. *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 81 (1996).

{¶ 34} Specific safety requirements are intended to protect employees against their own negligence and folly as well as provide them a safe place to work. *State ex rel. Cotterman v. St. Marys Foundry*, 46 Ohio St.3d 42, 47 (1989).

{¶ 35} The unilateral negligence defense to VSSR liability derives from *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988), in which an employer was exonerated from VSSR liability because an employee had removed part of a scaffold that had been required by a specific safety requirement. *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 192 (2000).

{¶ 36} However, a claimant's alleged negligence is a defense only where the employer has first complied with relevant safety requirements. *State ex rel. Hirschvogel, Inc. v. Miller,* 86 Ohio St.3d 215, 218 (1999).  A claimant's negligence bars a VSSR award only where the claimant deliberately renders an otherwise complying device noncompliant.  *State ex rel. R.E.H. Co. v. Indus. Comm.,* 79 Ohio St.3d 352, 355, (1997); *Martin Painting* at 339.

### Ohio Adm.Code 4123:1-5-07(C)

{¶ 37} In his April 10, 2013 order, the SHO found that Ohio Adm.Code 4123:1-5-07(C) does not apply "because an extension cord is not a hand tool and it is not a hand-held power tool or other hand held equipment."  On that basis, the SHO held that the safety rule is inapplicable.

{¶ 38} Clearly, an extension cord, by itself, is not a hand tool or a hand-held power tool or other hand-held equipment.  But that observation does not render the safety rule inapplicable.

{¶ 39} The question for the SHO that he failed to address was whether the extension cord is an integral part of the vacuum cleaner.  Clearly, the extension cord was an integral part of the vacuum cleaner.  The electrically powered vacuum cannot function without an extension cord that connects the vacuum to an electrical outlet.  Therefore, the reasoning of the SHO is simply incorrect.  Clearly, the employer was required, under the safety rule, to maintain the electrical cord in a safe condition, free of worn or defective parts.

### Ohio Adm.Code 4123:1-5-07(G)

{¶ 40} In his order, the SHO found that Ohio Adm.Code 4123:1-5-07(G) does not apply because, again, it was found that the electrical cord is not part of the power vacuum. The SHO points out that the extension cords were purchased separately and were attached to the vacuum by the injured worker.

{¶ 41} The SHO's reasoning seems to ignore that it is the extension cord that both delivers the electrical power to the vacuum and also provides grounding if a three prong extension cord is used.  That the safety rule provides that the power vacuum "shall be grounded" indicates that the electrical cord is an integral component of the power vacuum at issue.  Clearly, under the safety rule, the employer was required to provide grounding

for the power vacuum. That the electrical cord failed to provide the grounding is a violation of the safety rule.

{¶ 42} The magistrate further notes that the SHO further determined that there was no need to consider the question of whether the injury occurred in a workshop or factory. The commission has yet to consider that issue.

{¶ 43} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's VSSR application, and to enter an order, consistent with this magistrate's decision, that adjudicates the VSSR application.


/S/ MAGISTRATE
KENNETH W. MACKE



**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).